1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3

4    UNITED STATES OF AMERICA,

5          Plaintiff,

6          VS.                    CR. NO. 20-0639 JB

7    JOHNNY BLACK,

8          Defendant.

9

10

11        Transcript of Sentence Proceedings before
     The Honorable James O. Browning, United States
12   District Judge, Albuquerque, Bernalillo County,
     New Mexico, commencing on July 17, 2020.

13

14   For the Government:  Mr. Nicholas Marshall

15   For the Defendant:   Ms. Margaret Katze

16

17

18

19

20            Jennifer Bean, FAPR, RDR, RMR, CCR
                 United States Court Reporter
21               Certified Realtime Reporter
                  333 Lomas, Northeast
22              Albuquerque, NM  87102
                 Phone:  (505) 348-2283
23                Fax:  (505) 843-9492

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Well, I appreciate
 2    the marshals helping us get it set up, Ms. Wild
 3    getting it set up.  We had Braden and everybody from
 4    IT.  So I appreciate everybody working hard to make
 5    this happen.  I know that both the defendant and the
 6    victim's family are here.  So if at any point this
 7    isn't working, just say so; we'll try to make it
 8    work.  But everybody has worked real hard to try to
 9    make it work for everybody.  So I appreciate
10    everybody's cooperation.
11              All right.  The Court will call United
12    States of America versus Johnny C. Black, Criminal
13    Matter No. 20-CR-0639 JB.
14              If counsel will enter their appearances for
15    the Government.
16              MR. MARSHALL:  Good morning, Your Honor.
17    Nicholas Marshall for the United States.
18              THE COURT:  Mr. Marshall, good morning to
19    you.
20              And for the defendant.
21              MS. KATZE:  Margaret Katze for Mr. Black.
22              THE COURT:  Ms. Katze, good morning to you.
23    Mr. Black, good morning to you.
24              THE DEFENDANT:  Good morning, Your Honor.
25              THE COURT:  Mr. Black, Probation has
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    prepared some documents in your matter.  There is a
 2    presentence report and then there is an addendum,
 3    which I think basically contains another presentence
 4    report that was issued on July 1st, and then there is
 5    a second addendum which was released yesterday.  Have
 6    you reviewed those two PSRs and the two addendums
 7    that Probation has prepared in your matter, Mr.
 8    Black?
 9              THE DEFENDANT:  Yes, Your Honor.
10              THE COURT:  And Ms. Katze, have you
11    reviewed with Mr. Black the two presentence reports
12    and the two addendums?
13              MS. KATZE:  Yes, Your Honor, I went over
14    all of those with Mr. Black.
15              THE COURT:  And we agreed that we were
16    going to keep the restitution if everybody is
17    agreeable.  I think the Government will make a
18    representation at this time that restitution could
19    not be determined 10 days in advance of this hearing
20    with accuracy; is that correct, Mr. Marshall?
21              MR. MARSHALL:  Yes, Your Honor.
22              THE COURT:  And I think Probation was going
23    to make the recommendation that restitution could not
24    be determined 10 days in advance of this hearing?
25              PROBATION OFFICER:  Yes, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  And we received some material
2    yesterday, and Ms. Katze has indicated that she's not
3    prepared to address restitution; is that correct, Ms.
4    Katze?
5              MS. KATZE:  That is correct.
6              THE COURT:  So I will ask Ms. Wright --
7    we'll put restitution aside today, and I will ask
8    Ms. Wright to set a hearing within 90 days of today's
9    hearing with another date sometime within that 90
10   days to finalize restitution.
11             With that resolution of restitution, Ms.
12   Katze, I know the big issue was the obstruction of
13   justice.  It looked like it gotten taken care of,
14   everybody came to an agreement on that.  Do you have
15   any other issues or disputes with the PSRs or the
16   addendums?
17             MS. KATZE:  Your Honor, I do.  And I could
18   address those as part of my sentencing argument.  Can
19   I just clarify something with respect to the
20   restitution?
21             THE COURT:  Certainly.
22             MS. KATZE:  Will there be a formal request
23   for restitution filed either by Probation or the
24   Government?  I know Probation in the addendum
25   indicates that the family was making a request and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   attached a very rough thing.  And said that they were
2   awaiting more receipts, et cetera.  I would like to
3   respond in writing, and so I want to know, like, I
4   guess I'd like an indication of whether there is
5   going to be something more concrete, a specific
6   request filed that I will respond to.
7              THE COURT:  Do you know what they're going
8   to do?
9              PROBATION OFFICER:  Your Honor, I have been
10  in contact with the family, and the family will be
11  forwarding receipts, so I can make more of a more
12  concrete dollar amount in terms of -- and kind of
13  justify what they're asking for.
14             THE COURT:  Okay.
15             PROBATION OFFICER:  So I can work on that
16  within that window and then submit something to the
17  Court.
18             THE COURT:  So I guess from a procedural
19  standpoint, so that Ms. Katze has something to shoot
20  at, you'll work to get more documentation from the
21  victims or the victim's family, and you will prepare
22  another document.  And then, I guess, Ms. Katze, at
23  that point I'd encourage you to maybe work with Mr.
24  Marshall, and Probation to see if y'all can agree.
25  And if you can't agree, then I think that's the thing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    for you to shoot at.  Does that make sense?

2              MS. KATZE:  That sounds fine.  So first

3    we'll get something from Probation.  Then depending

4    what that is, if it looks like it's something that

5    Mr. Marshall and I can resolve, we can do that and

6    file that with the Court.  If not, I will file

7    something explaining my opposition to that.

8              THE COURT:  Okay.  Does that sound good to

9    you?

10              MS. KATZE:  That sounds fine.

11              THE COURT:  All right.  So tell me -- I'll

12    leave it to you how you want to handle your other

13    objections.  I know we've got the guideline set;

14    correct?  Now, there is no disagreement on the

15    guideline range?

16              MS. KATZE:  Your Honor, I think that's

17    correct.

18              THE COURT:  Okay.

19              MS. KATZE:  This is what I would suggest:

20    I understand that there are two family members that

21    want to address the Court.  Perhaps we could have

22    them come in first and address the Court, and then

23    either Mr. Marshall or I can make our argument, and

24    Mr. Black has a statement he'd like to make.  I can

25    address everything at one time.  Would that make

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    sense?

2              THE COURT:  Okay.  Let me then confirm so

3    that everybody understands or we're in agreement.  So

4    there is not any dispute on the guideline sentence.

5    As to Count 1 the guideline sentence is the

6    statutorily required sentence of seven years, which

7    will run consecutive to any sentence imposed.

8              As to Count 2, the offense level is 27, and

9    the criminal history category is 5, establishing a

10   guideline imprisonment range of 120 to 150 months.

11             Therefore, the total guideline range is 204

12   to 234 months.  However, under Rule 11(c)(1)(C) of

13   the Federal Rules of Criminal Procedure, the parties

14   have presented the Court with a plea agreement which

15   includes a specific sentence of 154 to 171 months.

16             Have I correctly stated the guideline and

17   the proposed range that the parties have asked the

18   Court to adopt, Ms. Katze?

19             MS. KATZE:  I believe so.

20             THE COURT:  Is the way that Ms. Katze is

21   proposing to proceed acceptable to you, Mr. Marshall?

22             MR. MARSHALL:  That's fine, Your Honor.

23             THE COURT:  All right.  So why don't we

24   then, if you know, which --

25             MS. KATZE:  I'm sorry.  I just have one

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   objection before they speak I'll just put on the

2   record.  I had requested, and Mr. Marshall, he

3   indicated there would be two family members that

4   wanted to speak.  And I requested that he please

5   provide me with their names and date of birth, dates

6   of birth.  And he responded:  No, this has not ever

7   been done as to my knowledge.  Your Honor, I think we

8   are entitled to that.

9           Mr. Black, though he's pled guilty,

10  continues to have Fifth Amendment rights, including

11  his due process right at sentencing.  And the

12  information that this Court uses for purposes of

13  sentencing has to be reliable.  And so anything about

14  people who are speaking, anything about their

15  background, I believe, would be relevant.  It could

16  be relevant to credibility, to bias.  And so I think

17  that that's a reasonable request that we have that

18  information.

19          THE COURT:  Well, do you have any problem

20  providing it right now, and we will see how we're

21  going to proceed?  Are you ready to present --

22          MR. MARSHALL:  I do, Your Honor.  I don't

23  think that the personal identifying information is

24  something that needs to be turned over regarding --

25  like the date of birth specifically.  I have no

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   problem turning over the names, and I eventually did
 2   turn over the names to defense counsel, I believe it
 3   was yesterday, about who was going to be speaking.
 4   The names I thought would be relevant and maybe even
 5   their relationship to the victim.  However, personal
 6   identifying information is something that could have
 7   been redacted in discovery and is not something that
 8   is necessarily relevant.  These individuals weren't
 9   witnesses to the case.  This is not Brady
10   information.  They're here merely under -- to make a
11   victim impact statement under the Crime Victims Act.
12   They are afforded certain rights and protections
13   under that act, including rights from harassment, and
14   protections from harassment.  And so I don't feel
15   that providing defense counsel with personal
16   identifying information is something that was
17   necessary.  This is not something they're going to
18   even get to do a cross-examination of these
19   witnesses.  They're just merely to give a statement
20   about how the crimes of Mr. Black have impacted their
21   lives.  So that their names and the relationship to
22   the victim would be relevant.  Any other information
23   I don't think, Your Honor, would be relevant, and
24   could borderline on the harassment of being protected
25   under the Crimes Victims Act.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Ms. Katze.
 2              MS. KATZE:  Your Honor, I am not sure why
 3    the Government concedes that their names are relevant
 4    but their date of birth isn't relevant.  The reason
 5    for the names and the dates of birth is so that we
 6    could possibly run a background check or find out
 7    something about them.  Not to harass them, but
 8    because they're being offered as -- I absolutely
 9    understand what their role is.  They're speaking
10    under the Victim Witness Act, I understand that.  But
11    their statement is something being presented on
12    behalf of the Government to impact the Court with
13    respect to the eventual sentence.  And anything that
14    the Court is presented with needs to be reliable.
15    And my position is that unless we can run just even a
16    cursory background check, I don't have anything --
17    I'm not going to cross-examine them, but if there was
18    something about their background that indicated they
19    weren't reliable or credible, I think that would be
20    important for the Court to know.  If there was
21    something as far as their ability to proceed and
22    understand things, if there is a particular bias -- I
23    mean, obviously, there is a bias.  They're the family
24    of the deceased woman, I understand that, but --
25              THE COURT:  Well, let's do this:  I tend
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   to -- this is what I tend to think, and I've not had

2   this situation before, so this is off the top of my

3   head -- I think the Government should probably give

4   names in advance so that they know who is going to be

5   speaking here today.

6          In the future, if there is something that

7   is confusing about the person, for example, if there

8   is a John Smith, Sr., and a John Smith, Jr., maybe

9   rough ages, you know, this is the dad, this is the

10   son, something like that.  I guess I tend not to

11   think date of birth, Social Security numbers, that

12   sort of stuff needs or should be disclosed.  So I

13   don't know if that's helpful more down the road than

14   it is today.  But if you -- after you hear these

15   people, if you decide you need to have an

16   investigator or somebody to run some more

17   information, then we'll figure out how to proceed.

18   But maybe that will give you some guidance for down

19   the road, and kind of what I think is probably fair.

20   Just make sure that the defense lawyer knows what

21   they're going to see without disclosing maybe

22   detailed information.

23          Does that work for you this morning, Ms.

24   Katze?

25          MS. KATZE:  Your Honor, if that's what we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   have to go with, then we're going to go with that.

 2            And with all due respect, Mr. Marshall did

 3   not tell me the names.  He responded to your

 4   courtroom deputy when she said she had to have the

 5   names to know who was going to be in the courthouse

 6   to let security know.  So, yes, at the end of the day

 7   I got the names because I was copied in the email.

 8   But in response to my request I read you, the

 9   response I got was, "No."  So I guess that I do have

10   the names now, yes.

11            THE COURT:  Well, in the future, I think

12   names probably should be disclosed -- not probably,

13   names should be disclosed -- and enough information

14   if the defense lawyer asked for it, so that they know

15   roughly the age or something so that there is not any

16   confusion.  And like I said, if we get along and you

17   feel like you need a break or something to have an

18   investigator run something, let me know.

19            MS. KATZE:  Thank you.

20            THE COURT:  All right.  Anything else then,

21   Ms. Katze?

22            MS. KATZE:  I just realized I wanted to

23   make that objection prior to them to speaking.

24            THE COURT:  Okay.  That's fine.  Anything

25   else, then, before Mr. Marshall has the first
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   victim's family or statement on behalf of the family,
 2   Mr. Marshall?
 3           MR. MARSHALL:  No, Your Honor.
 4           THE COURT:  All right.  Do you want to ask
 5   the first one to come to the courtroom, and -- all
 6   right.  Come up on up and state your name.
 7           MR. MORA:  Thank you, Your Honor.  Good
 8   morning everyone.  My name is Alan Mora.  I'm the
 9   oldest brother of Jessica Mora.
10           THE COURT:  All right.  Mr. Mora, you may
11   proceed.
12           MR. MORA:  I wrote a little something here,
13   Your Honor.  My name is Alan Mora, of course, the
14   oldest brother of Jessica.  I'm writing this on
15   behalf of my mother and father, who are both
16   deceased, and my brother, Tim Mora.
17           Your Honor, Jessica was 13 years old then,
18   and I was -- she was 13 years younger than me and my
19   brother.  She was 8 years younger than my brother.
20   When she was born she was a sparkle of our eyes.  Our
21   mother loved her boys but finally had a girl.  When
22   she brought her home, I begged my parents to stay in
23   my room -- her to stay in my room.  They finally gave
24   in and put her in my room, where I woke up as a
25   13-year-old to feed her, change her, et cetera.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Jessica was the apple of my eye.  At the age of 10

2    she lost her mother to cancer.  At this time the boys

3    and her father stepped in and brought her up to be a

4    beautiful young lady.  Her father taught her how to

5    shave her legs, comb her hair, et cetera.  As she

6    grew older, my brother would comb her long beautiful

7    hair longer than my father because I couldn't do it,

8    I can't comb hair.

9          Jessica was always with one, if not all

10   three of us always.  Jessica grew into a teenager and

11   adult with her boys by her side.  As a young girl,

12   she became the aunt of a niece and two nephews who

13   were her heart and soul.  Jessica always had time for

14   taking them on trips, fishing and sporting events, et

15   cetera.  Jessica loved being around her family,

16   cooking, fishing, watching sports, or whatever we

17   came up with.  Jessica then lost her father at a

18   young age also, and assured the boys and the family

19   she would handle everything, which she did without

20   hesitation.

21          As you could see, Your Honor, Jessica was a

22   very beautiful and exceptional woman.  I could go on

23   and on about her.  But the bottom line is she should

24   not have been taken away from us in the brutal way

25   she was.  Your Honor, I'm respectfully asking that --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   I'm respectfully asking you that the people who are
 2   responsible for her horrific death be held to the
 3   harshest penalty that can be given.
 4            Thank you, Your Honor, for your
 5   consideration.  Respectfully me, Alan Mora, Retired
 6   Police Lieutenant, over 30 years; Tim Mora, my
 7   brother, Retired Corrections Sergeant, 20 years; and
 8   the entire Mora family.
 9            THE COURT:  Thank you, Mr. Mora.
10            MR. MORA:  Thank you.
11            THE COURT:  All right.  Mr. Marshall, do
12   you have the next statement on behalf of the victim's
13   family?
14            MR. MARSHALL:  Yes, Your Honor.  I'll go
15   get them.
16            MS. MORA:  Can you hear me?
17            THE COURT:  Yes, do you want to identify
18   yourself?
19            MS. MORA:  Yes, I'm Nicole Mora.
20            THE COURT:  All right.  Ms. Mora.
21            MS. MORA:  Your Honor, my name is Nicole
22   Mora.  I'm her only niece and I have cerebral palsy.
23   When I was born we were 10 years apart.  My aunt
24   raised me as a child with a disability.  I was with
25   her all the time.  We went fishing, swimming,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   shopping.  And Jessica took me to New York, #1 on my
 2   bucket list.  We would take medical classes and help
 3   each other.  Aunt Jessica was going to be my
 4   caregiver when my mom or dad passes.  My aunt was the
 5   best aunt you could ever have.  She is like my
 6   sister, my role model, my best friend, and my mother.
 7   There is no person like her.
 8            I miss her so much.  I have sleepless
 9   nights, and I wake up and she's not there.  I'll
10   never see her beautiful face, her beautiful smile,
11   and her voice again.  She did not deserve to die this
12   horrific death.  She deserves -- sorry.  Your Honor,
13   this defendant should never walk on the streets
14   again.  Please, Your Honor, I beg you to give him the
15   maximum sentence under the law.
16            Thank you, Your Honor.
17            THE COURT:  Thank you, Ms. Mora.
18            All right.  Mr. Marshall, does the United
19   States have further people it wishes to address the
20   Court?
21            MR. MARSHALL:  No, Your Honor.
22            THE COURT:  All right.  Thank you, Mr.
23   Marshall.
24            How did you want to proceed next, Ms.
25   Katze?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. KATZE:  Your Honor, Mr. Marshall can

 2    make his statement, then I can go, and my client can

 3    speak, if that's --

 4              THE COURT:  Okay.

 5              MS. KATZE:  -- okay.

 6              THE COURT:  All right.  Mr. Marshall, do

 7    you want to make your statement?

 8              MR. MARSHALL:  Yes, Your Honor.  Does the

 9    Court have a preference whether the podium or counsel

10    table?

11              THE COURT:  It doesn't matter, just as long

12    as Ms. Bean can hear you.  That's all that's

13    important.

14              Do you move for the third level adjustment

15    downward for acceptance of responsibility?

16              MR. MARSHALL:  Yes, Your Honor.

17              THE COURT:  And I assume there is no

18    objection to that motion, Ms. Katze.

19              MS. KATZE:  No objection.

20              THE COURT:  Do you have a written motion

21    and order?  Do you want to supply one after the

22    hearing?

23              MR. MARSHALL:  I'll have to supply one,

24    Your Honor.  I must have left it at the office.  I'm

25    sorry.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Go ahead, Mr.
 2   Marshall.
 3              MR. MARSHALL:  And, Your Honor, we're here
 4   today, obviously, on the sentencing for Mr. Black.
 5   And the United States recognizes the assistance that
 6   Mr. Black has provided.  And you can see that
 7   acceptance as well as the assistance has been
 8   indicated, and it's part of reasons for why the
 9   Government entered into this 11(c)(1)(C) with the
10   defendant.
11              THE COURT:  Yeah.  And I guess that was one
12   thing I probably should have asked both you and Ms.
13   Katze, is if in your remarks if you'll justify -- I
14   know y'all are differing about where within your
15   range, but if you could also justify why a variance
16   is appropriate here to the range that y'all have
17   agreed to in your Rule 11(c)(1)(C) agreement.
18              MR. MARSHALL:  Yes, Your Honor.
19              THE COURT:  So thank you for doing that.
20              MR. MARSHALL:  And there is a bit of a
21   variance, as the Court has noted.  The defendant is
22   receiving about a 50 to 60 month benefit as part of
23   the (c)(1)(C) agreement.
24              Mr. Black, after the plea agreement, met
25   with law enforcement as part of the plea addendum,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and as part of agreement that he would then help
 2    provide assistance in locating the remains of Jessica
 3    Mora.  He did so.  He gave an approximation of where
 4    the toolbox that contained the body was going to be
 5    found.  And law enforcement was able to go out
 6    approximately -- there was two or three days after
 7    the information was gathered and was able to recover
 8    the body and the remains.  And it was in the
 9    approximate location that Mr. Black had provided.
10            And so that evidence that was collected is
11    now in the process of being examined by the New
12    Mexico Office of Medical Investigator.  And then will
13    go on to further forensic analysis, and hopefully,
14    aid the investigation into this matter, and hopefully
15    future prosecution of the other offenders that were
16    participating in these acts with Mr. Black.
17            The other thing he's done for the family is
18    give a little bit of peace of mind.  For a long time
19    the family was unsure of -- at first, where she was,
20    if she was still alive and then later where her
21    remains were, and had wanted to have proper services
22    for her.  And what this will do is now enable them to
23    be able to have proper funeral services once they
24    receive the final remains from the Office Medical
25    Investigations, that they can finally have the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    funeral service that has been a long time coming,

2    almost two and a half years after the death of Ms.

3    Mora they will finally be able to put her remains to

4    rest.  So for those reasons the parties entered into

5    an agreement, and that is the reason for the

6    variance.

7            The net benefit of the cooperation has been

8    included in that agreement and it has been mutually

9    beneficial to both parties.  That said, Your Honor,

10   that doesn't necessarily mean, the United States has

11   not been asking for the low end of the agreement in

12   that range.  We're actually asking for the high end.

13   We're asking for the full 171 months.  Much of this

14   is already laid out in the United States sentencing

15   memorandum, but the nature of this crime was it was a

16   very heinous act.  Even though the United States was

17   only able to prove that Mr. Black participated after

18   the fact, and participated, what happened after the

19   fact is -- continued to be heinous.  And there was

20   evidence that the defendant was aware of what was

21   going on even if he wasn't participating in the

22   murder of Ms. Mora, as he arrived with the tarp and

23   the plastic shortly after her death.  Mr. Black

24   participated in dismembering the body.  They tried to

25   burn it, as noted, out near Velarde, New Mexico, in a

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    remote location, but became afraid that the smoke was

2    going to be -- someone was going to find them.  So

3    they collected what was left of her remains at that

4    point; put them -- later put them in a toolbox,

5    covered it with concrete, and then weeks to months

6    later they buried it out by Rio Chama, which was

7    eventually then -- the location was provided to law

8    enforcement and the remains were eventually recovered

9    and are now currently at OMI.

10           Mr. Black was integral to the coverup.  He

11   was a key member of the group that was both

12   dismembering the body but burning the body and

13   attempting to hide other evidence related to her

14   kidnapping and murder.  He was there when they were

15   burning different articles of clothing, bedding,

16   anything that they thought that could have been

17   burned that had evidence attached to it.  He was part

18   of the group that was putting her remains in the

19   toolbox, and dismembering her when they went to go

20   burn her body.  And so this is not someone who played

21   a minor role afterwards.  As part of the coverup he

22   was a major player when it comes to the coverup of

23   the investigation into her -- into Jessica Mora's

24   kidnapping and murder.

25           And after they had killed Ms. Mora, there



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    appears, almost like a struggle or a hold, the
 2    defendant's girlfriend at the time, Crystal Ramos --
 3    who was also a participant, she was a participant in
 4    the kidnapping and murder, as well as the coverup --
 5    she was up in the Denver, Colorado area, and when she
 6    was stopped by officers, she pulled a gun on the
 7    officers and was shot to death by police officers
 8    outside of Denver, Colorado.
 9              After that occurred, it appears that Mr.
10    Black was upset with law enforcement, as there are
11    now multiple accounts that he was either shooting at
12    or brandishing firearms at law enforcement officers
13    after this occurred.  There was a state criminal
14    complaint for shooting at officers, as well as Count
15    1 in this case.
16              And what that does is present a dangerous
17    situation, because both of those times defendant was
18    doing that in very public places.  These were on
19    public roadways in and around the Espanola area.
20    This situation where he was brandishing and shooting
21    a firearm at an officer was right there by Riverside
22    Drive in Santa Cruz, which is right in the heart of
23    Espanola.  And so that it was in the middle -- it was
24    during the daytime.  And on the dash cam video you
25    see multiple other vehicles driving on those streets.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   So not only was he endangering the lives of the
 2   people in his vehicle, as well as the officer's
 3   vehicle, he was also endangering the lives of people
 4   in Espanola and the Espanola area by when he was
 5   starting to shoot and do these actions.  So what he
 6   did was present another dangerous situation.
 7           So the nature of his conduct, Your Honor,
 8   was obviously dangerous.  The act involving Ms. Mora
 9   is a very heinous act.  And for those reasons the
10   defendant deserves the high end of the guideline
11   range.
12           Additionally, when you look at the
13   defendant's history and characteristics, there is a
14   reason that those also indicate that he deserves the
15   high end of the guideline range.  He's a repeat
16   felon.  And yet in this case -- and at the time of
17   his arrest he was running around with firearms.  When
18   he was arrested, he was found with a gun on him that
19   was different than the firearm that was used in the
20   underlying case.  There was a difference in caliber
21   of the weapon, from a 40 caliber to a nine
22   millimeter.  So it appears that he was using at least
23   multiple firearms as a repeat felon in committing
24   crimes in between Espanola and the Rio Rancho/Santa
25   Ana area.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        The defendant self-reported in his PSR that

2   he was a meth abuser, an alcohol abuser, and

3   attributed some of this to that.  But that also

4   presents a dangerous situation.  When someone is

5   addicted to substances and is acting out, it creates

6   a much more dangerous situation for the other

7   individuals in the community.

8        You can also look at the lengthy criminal

9   history that was provided in the PSR, that the

10  defendant has an extensive criminal history,

11  including multiple crimes that were committed while

12  he was on supervision or awaiting adjudication on the

13  underlying offense, and that he was still continuing

14  to pick up new crimes.  So that goes to his history

15  and characteristics, that he is a dangerous

16  individual that should not be given the benefit of

17  the low end of the sentencing range, and instead

18  should be given the high end of the sentencing range.

19       And, Your Honor, for these reasons we're

20  asking that he receive the sentence of 171 months

21  that is the high end of the sentencing range.

22       We're asking for the maximum amount of

23  supervised release.

24       And the parties are going to, I believe,

25  try to reach an agreement on the restitution.  And if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    not, we'll be back before the Court to try to come to

 2    some sort of restitution agreement.  I do believe

 3    under 3663 that this is a crime eligible for

 4    restitution.  And we'll see if the parties are able

 5    to agree on that amount as the information regarding

 6    restitution came in late.  And so we will hopefully

 7    be able to resolve it.  If not, we'll be back before

 8    the Court.

 9              THE COURT:   All right.  Thank you, Mr.

10    Marshall.

11              And Ms. Katze, we're turning back to you

12    now.

13              MS. KATZE:  Thank you.

14              THE COURT:  Ms. Katze.

15              MS. KATZE:  I'll come up here.  Your Honor.

16    First -- well, I just want to make clear this is not

17    a sentencing about a murder.  Mr. Black is not

18    accused of murdering Jessica Mora.  The Government

19    doesn't believe he murdered her.  All their

20    witnesses, in what I received heavily redacted

21    statements all say that he was not involved in the

22    murder.  And I think -- I get that -- I completely

23    understand that it's a tragic murder.  But it's an

24    inappropriate way to sensationalize the sentencing on

25    an accessory after the fact.  So with respect to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that, just quickly, as far as justification for the

2    plea, I'll actually kind of hit on those through my

3    argument.  But I just wanted to remind the Court that

4    this is not a murder sentencing.

5            So my first type of objection that I want

6    to bring to the Court's attention, I've written in my

7    objections that it appeared to me that Probation had

8    received some discovery I had not.  And I referred to

9    a specific paragraph in the presentence report where

10   Probation lists the full names of the apparent

11   murderers.  I looked at my discovery that I got from

12   the Government, and it's very, very redacted.  And

13   the only thing I did see on a particular page were

14   those last names.  I asked Probation where she got it

15   from.  I asked the Government, and the Government

16   said -- I said, Obviously, she got some other

17   information I didn't.  I have that nowhere.  Can you

18   point me to the discovery where it is.  And Mr.

19   Marshall pointed me to a particular page, the page

20   that I referred to that had all the witnesses' last

21   names on it, and it didn't have the full names.  So

22   he sent me another copy of all the discovery showing

23   me, saying:  This is what I sent to Probation.  And

24   it was the same discovery he had sent me.  So I still

25   couldn't understand how Probation got these full

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   names.  So I talked to Probation again, and she said
 2   she had spoken to the case agent, the case agent had
 3   given her the names.  So, obviously, the case agent
 4   has spoken to her about this case and about matters
 5   that affect Johnny Black and his sentencing.
 6            So I request -- after finding out what
 7   actually happened, I wrote to the probation officer
 8   and said the United States Probation Office got the
 9   information in paragraph 42 from talking to the case
10   agent.  He gave her those individuals' full names,
11   information I am not given.  I would like to know
12   what else he told her.  I am concerned that she
13   received information I was not provided.
14            And the Government responded and said,
15   first of all, that as far as matching up the names, I
16   could ask my client about those names, but said that
17   he was not turning over information regarding an
18   ongoing investigation.
19            Here are my concerns:  First of all, the
20   Government has the burden.  It is not a substitute
21   for the Government's burden to tell me to ask my
22   client.  It's never a substitute in a criminal case
23   to say:  Well, ask your client what happened.  We
24   don't have to turn over information.  The Government
25   has the burden of proof, and the Government has the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    discovery obligation.

2           And so here's my concern:  I can see what's

3    in the presentence report.  I can respond to it.  I

4    can dispute it.  I don't know what the probation

5    officer has learned subrosa.  While it's not in the

6    probation report, might be in a recommendation she

7    either writes or discusses with you.

8           THE COURT:  No, well, let me just sort of

9    assure you on that.  The only thing I have in this

10   matter that's independent -- and I don't even think

11   that Probation would care if I showed it -- but I

12   have a confidential sentencing memorandum.  But it

13   simply -- as it always does -- it gives me the

14   offense level, the criminal history, the statutory

15   provisions, the guideline provisions, and then their

16   recommended sentence.  And then they give the

17   justification for their recommendation to me as the

18   sentence, and then give me a statement about

19   voluntary surrender.  So it's only a page, which is

20   just sort of the typical summary of those three

21   categories, and then the recommendation, and then

22   discussions about voluntary surrender.  And that's

23   it.  The rest is a script.  So on that score, and I

24   have not talked to Probation at all until we got here

25   this morning.  They wanted to talk to me about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   restitution.  You saw me sort of say:  Talk to -- so

2   I can assure you that I don't have any information

3   that's not in that, which I think is all in the PSR,

4   or -- yeah, I mean, I have not talked to Probation at

5   all until this morning as we were getting ready to

6   go.  Does that help?

7           MS. KATZE:  Well, I appreciate you sharing

8   that, but the problem is I don't know what's in their

9   recommendation, I don't know what's in the

10  recitation --

11          THE COURT:  Well, I can read it because

12  they recommend what Mr. Marshall does; they recommend

13  the high end of your range, and they just tell me how

14  you would run it, because remember, this is a

15  consecutive, so it's got a little bit of complexity.

16  And they just simply say:  "It's respectfully

17  recommended that the defendant be committed to the

18  custody of the Bureau of Prisons for a term of 171

19  months, and that any fine be waived.  A mandatory

20  penalty assessment should be assessed."  They give

21  the amount.  They recommend four years of supervised

22  release.  And then they talk about attachment A, what

23  we call the Bruce memo in this district, and the

24  sentencing language.  And then they recommend that I

25  not grant any voluntary surrender.  And that's all.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1           MS. KATZE:  Okay.  So, Your Honor, I
2   understand they make a recommendation for 171 months.
3   So they don't write out why they think that's a
4   reasonable sentence?
5           THE COURT:  No.  The tradition in this
6   district is -- and it's partly because of me so that
7   we are very transparent, they do that in the PSR.  So
8   if you look at part F on paragraph 151 of the current
9   one, that's where they list out the factors.  And
10  then in paragraph 52 they say:  Based on the above
11  factors, a sentence pursuant to Rule 11(c)(1)(C) may
12  be warranted.  When she say "may be warranted,"
13  that's their signal that they think that's the range
14  that's appropriate.  They're kind of respectful.
15  They don't tell me that's the sentence should be
16  imposed.  They say "may."  But that's their signal
17  that they either think a guideline sentence is
18  appropriate.  But in this district, somewhat at my
19  urging -- and I think they follow it throughout with
20  my colleagues -- they do that publicly, so that you
21  have something to shoot at; that there is not
22  something behind the scenes, it's all very public.
23  And then we as judges have to decide whether we're
24  going to follow their recommendation, the
25  Government's recommendation, or the defense lawyer's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   recommendation.

2          MS. KATZE:  Well, thank you, Your Honor.

3   And I appreciate you talking about fairness and

4   transparency, because that is my concern.  And I

5   completely trust your representation that you did not

6   get any additional information from Probation.

7          I guess my concern is even at the very

8   minimum, she's recommending the high end of the

9   guidelines.

10         THE COURT:  No, no, no --

11         MS. KATZE:  I meant of the 11(c)(1)(C)

12  guideline range, sorry.

13         THE COURT:  She's in agreement -- sometimes

14  I guess they recommend that a plea agreement be

15  rejected.

16         MS. KATZE:  No, no --

17         THE COURT:  They're not here, they're

18  saying the range y'all have come up seems to be

19  appropriate, and they think something in that range,

20  and then they draft it out, script it.

21         MS. KATZE:  So my only final concern, Your

22  Honor, and then I will move on, is that in making

23  that recommendation to the Court, what is that based

24  on?  Is that based on any information that I don't

25  have access to?  That's my concern.  She had a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   conversation with the case agent, and I feel that I
 2   should be entitled to exactly what the Court was
 3   talking about, fairness and transparency, to know
 4   what information she got.  Because we already know;
 5   we have concrete evidence that she got information I
 6   didn't.  So all I was asking -- that was my request.
 7          THE COURT:  My experience has been -- and
 8   you can tell me if yours is different -- that when
 9   defense counsel just asks Probation almost anything,
10   they'll tell them.  I mean, if you say:  Where did
11   you get this information, anything else that was
12   told, Probation is pretty open about that.  Do you
13   have a different experience with Probation?
14          MS. KATZE:  No.  The probation officer
15   answered my questions, sent me the page of the
16   report.  And then, when I pointed out that wasn't
17   what it reflected, she said she talked to the case
18   agent.  It seemed appropriate to me, like the next
19   step would be to talk to the Assistant U.S. Attorney
20   and have him talk to the case agent and find out what
21   was discussed.  Under that circumstance, that seemed
22   like the appropriate next step to me.
23          THE COURT:  I mean, I don't think any of us
24   want to discourage Probation from doing their
25   independent investigation.  That's good for all of us
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   that they're not relying just upon Government
 2   documents; they're not relying just upon discovery,
 3   but they're working; they're working and doing their
 4   own independent investigation.  I think that's good
 5   for all of us.  And then, if they're willing to tell
 6   you where they got it, it seems to me that's a
 7   plus-plus for all of us.  Would you agree with that
 8   sort of approach?
 9           MS. KATZE:  Absolutely.  Especially if that
10   last part happens.
11           Okay, Your Honor, if I may, I just have a
12   couple of factual corrections.  In the Government's
13   sentencing memo, page 3.
14           THE COURT:  The Government's --
15           MS. KATZE:  Sentencing memo, page 3,
16   they're talking about -- this is the 924(c) count --
17   he writes that the Officer Guipan (phonetic), he
18   could not make out the male's face.
19           And I just want to clarify that that is not
20   what the officer said.  I'm going to read a couple of
21   things from the complaint.  And I just point out this
22   is important because this is actually a weakness in
23   the Government's case, and goes to the reason why the
24   plea is certainly a benefit to both parties.  What
25   happened is after during the chase here, in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    complaint it says Officer Guipan pulled alongside of

2    the vehicle and was able to clearly view its

3    occupants.

4           Further down, Officer Guipan again clearly

5    saw the male driver and female occupant as the two

6    vehicles traveled side on with each other briefly.

7           The reason that's important, Your Honor, is

8    that they eventually stop a man that they think that

9    matches the description of who Guipan thought he saw.

10   It turned out not to be him, according to another

11   witness.

12          We haven't litigated that at all. We have

13   not challenged that.  There were no -- had we not had

14   a plea agreement, we would certainly be challenging

15   the veracity of that.  But as part of the plea

16   agreement, Mr. Black stepped forward, took

17   responsibility, admitted what he had done.  And,

18   therefore, the Government did not have to put their

19   proof to the test.

20          But I'm pointing out a specific place where

21   there is an error in the Government's sentencing

22   memo, but maybe more importantly to the point of the

23   Court asking about weaknesses in the Government's

24   case and reasons why the plea is appropriate.  That

25   would be a correction.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          I also want to point out another thing in

2     the Government's sentencing memo, on page 4, the

3     Government says at the end:  "The defendant may also

4     have known -- may have been concerned that law

5     enforcement suspected he was involved in a murder

6     investigation."  There is absolutely no evidence

7     whatsoever that Mr. Black knew, had any reason to

8     know he's a suspect in a murder investigation.  He

9     was not.  So that's pure speculation.  Again, it's

10    sensationalism.

11          THE COURT:  Let me ask this, though, is the

12    factual -- is the factual statement that he brought

13    tarps and plastic and arrived at the scene, is that

14    correct?

15          MS. KATZE:  Your Honor, I don't have any --

16    I'm not opposed to the fact that he brought tarps and

17    plastic to the scene.  But there is no evidence --

18    what you're bringing up is a separate issue.  The

19    first issue is -- the issue I brought up is with

20    respect to the Government talking about why he may

21    have tried to flee or why he may have had a gun,

22    because he thought he was -- or why he may have been

23    shooting at a police officer, because he may have

24    known he was a suspect in a murder investigation.

25    That's just completely not true.  The Government's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    throwing that out as speculation as to why he might
 2    have.  There is no evidence of that at all.  So I
 3    think that's unfair speculation.
 4              In answer to your question, Your Honor,
 5    with respect to asking about the tarps, I do want to
 6    specifically talk about that, because you're right,
 7    the Government intimates that Mr. Black somehow was
 8    involved in the planning because he brought the tarps
 9    and the plastic.  Again, it's totally speculating as
10    though my client was involved in the preparation.
11              And the truth is -- I think evidence would
12    show that he had absolutely nothing to do with the
13    preparation.  Whether or not he knew people were
14    planning to beat up a woman who stole money is a
15    separate issue.  But he had nothing to do with the
16    preparation.  And I think it's far more likely what
17    happened after those people, as they say in their
18    statements, went too far and killed Jessica Mora,
19    that they called Johnny Black and asked him if he
20    would help them.  So it's all part of accessory after
21    the fact.
22              And I really find it unfair intimation by
23    the Government that he somehow was involved in the
24    planning, when there is no evidence at all that he
25    was involved in the planning, and the Government
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    agrees he wasn't involved in the murder whatsoever.

2              Does that address your question, Your

3    Honor?

4              THE COURT:  Yeah, I didn't know what your

5    thoughts were on that.  But I understand that.

6              MS. KATZE:  There is no evidence that he

7    went out and got tarps and plastic.  I think it's far

8    more likely, given what the actual evidence is, that

9    after they went too far and they killed this woman,

10   that they called and asked him to help, and asked him

11   to bring plastic.

12             Your Honor, I wanted to -- and this is

13   related to several of my objections.  And it kind of

14   addresses the issue of relevant conduct and

15   reliability of the informant information.  So,

16   unfortunately, the way I got discovery I don't know

17   who said what.  The reports are all so heavily

18   redacted, I have no idea who said what.  There are

19   little snippets.  And Probation chose to sort of do

20   it like an amalgamation of all the informants and

21   just refer to the confidential informants.

22             So I already mentioned this earlier.  But I

23   just want to reiterate again that the information

24   that the Court relies on to come up with this

25   sentence must not just be relevant, but it has to be

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                               1-800-669-9492
PROFESSIONAL COURT                          e-mail: info@litsupport.com
REPORTING SERVICE

```
 1   reliable.
 2            First, I want to talk about relevant
 3   conduct, because both Probation and the Government
 4   keep referring to relevant conduct.  It's not
 5   relevant conduct.  Anything having to do with the
 6   murder is not relevant conduct.  Anything having to
 7   do with the murder should not be in the report.
 8   Johnny Black is not accused of the murder, nobody
 9   thinks he was -- participated.  He has not pled
10   guilty to the murder.  He's pled guilty to accessory
11   after the fact including all those sensationalized
12   details which obviously -- I mean, obviously they are
13   heartbreaking and dramatic details -- is unfair.  And
14   it's a plea -- it's an unfair emotional plea.  And
15   it's not fair to have those in Mr. Black's
16   presentence report.
17            Let me read to you from Section 1B1.3, with
18   respect to relevant conduct, because, as I said,
19   Probation and the Government are arguing that's
20   relevant conduct.  It's not relevant conduct.  That's
21   not what relevant conduct is.
22            THE COURT:  Well, but let me ask this:
23   Since the crime is accessory to the fact, doesn't the
24   Court have to have a robust understanding of what the
25   crime is that the defendant is saying they are an
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                      1-800-669-9492

**BEAN**
**& ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

1   accessory to?

2           MS. KATZE:  I'm not sure you need a robust

3   understanding.  I think you do need to know that

4   there was kidnapping that led to a murder.  I

5   understand that.  I don't think you necessarily need

6   three or four pages of details of how the person was

7   beaten and injured and killed, when Johnny Black had

8   nothing to do with that.  It's just completely

9   separate crimes, accessory after the fact.

10          I'm going to -- let me just -- I just want

11  to read this, because relevant conduct is a term of

12  art in federal court, right, in the guidelines.  You

13  can't just sweep anything you want and say it's

14  context and it's relevant conduct.  That's not what

15  relevant conduct is.  A defendant's relevant conduct

16  does not include the conduct of members of a

17  conspiracy prior to the defendant joining the

18  conspiracy, even if the defendant knows of that

19  conduct.  We don't even have a conspiracy here.

20  Johnny Black is not charged with conspiracy.  There

21  is no conspiracy charge.  So this, I think, makes the

22  point that even when there is a lower bar, when there

23  is actually conspiracy, the defendant's relevant

24  conduct does not include the conduct of members of

25  the conspiracy prior to the defendant joining the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                    1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

 1    conspiracy.  The accountability of the defendant for

 2    acts of others is limited by the scope of his or her

 3    agreement to jointly undertake the particular

 4    criminal activity.  Acts of others that were not

 5    within the scope of the defendant's agreement, even

 6    if those acts were known or reasonably foreseeable to

 7    the defendant are not relevant conduct.  I mean,

 8    that's exactly what we have here.

 9             THE COURT:  Well, I guess I don't have any

10    problem with everything that's in the PSR being in

11    the PSR.  Is your concern that certain portions of it

12    should have another title on it and moved to a

13    different section?

14             MS. KATZE:  No, I don't want it in the

15    presentence report.

16             THE COURT:  I know you don't want it in

17    there.

18             MS. KATZE:  It doesn't belong there.  And I

19    don't want you to consider that.  I don't want you in

20    your sentencing decision to be considering these

21    terrible facts of a murder that my client didn't

22    participate in.

23             THE COURT:  Let's just say your version of

24    the facts is correct; he received a phone call saying

25    something went terribly wrong, it seems to me that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    what went terribly wrong and what brought him to

2    start bringing tarps and plastic and those sort of

3    things is terribly relevant, I mean, even by your

4    theory.

5              MS. KATZE:  Yes, so this is what I think

6    would be appropriate:  The list of names of the

7    alleged murderers that is in the presentence report.

8    According to the evidence, Jessica Mora stole a debit

9    card from Crystal Ramos, stole $400 from her; Crystal

10   Ramos found out.  She and the other people and that

11   list of people got Jessica to come over to the house

12   with the intention of beating her up and teaching her

13   a lesson.  And that apparently went too far and she

14   was killed.

15             MR. MARSHALL:  Your Honor, if I --

16             THE COURT:  No, no, I'll let you come back

17   if you want.

18             MS. KATZE:  You don't need three pages of

19   those salacious details, when my client didn't

20   participate in the murder.  Your Honor, if I may ask:

21   Why do you think it is relevant for you to have all

22   the horrific murder details in the presentence

23   report?  And it even concerns me that we're spending

24   so much time arguing over this because I feel like

25   it's just reinforcing the facts of the murder, which

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    I think is unfairly considered by you, if it is being
 2    considered by you.
 3              THE COURT:  No, it is.  I mean, I think it
 4    adds to the horrendous nature of everything that
 5    occurred here.  But I still think, even in your
 6    version of events, it may be that all these details
 7    were part of what caused Mr. Black to do what he did.
 8              MS. KATZE:  But why do you think that?  Why
 9    would it not just be sufficient for his friends to
10    have told him:  We killed this person; get over here
11    and help us?  Why is -- whether they beat her up or
12    kicked her, why is that relevant, when everyone
13    agrees, everyone agrees my client wasn't there, had
14    nothing to do with the murder?  The Government
15    agrees, all the heavily redacted witnesses.  Why is
16    that relevant?
17              THE COURT:  Well, if they did take a power
18    tool and start drilling into her body, that might
19    have been some reason why they decided they needed to
20    destroy a body and mutilate it and burn it.
21              MS. KATZE:  Why is it relevant?  Why is
22    that relevant?  What's relevant is that my client was
23    accessory after the fact.  He participated in trying
24    to get rid of the evidence.
25              THE COURT:  Well --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          MS. KATZE:  I mean, you're right, but
 2   that's the whole problem.  That's a horrible fact to
 3   hear that somebody drilled into the side of a person.
 4   But my client -- 100% we know my client didn't do
 5   that.  He wasn't even there.  So the fact that the
 6   Court is pointing that out as a horrible fact that is
 7   taken into consideration is exactly, exactly my
 8   concern.
 9          THE COURT:  Okay.  Well, I'm leaving the
10   material in.  I mean, it seems to me it's highly
11   relevant to determining what he's an accessory to,
12   and what was going through his mind and why he was
13   doing what he did.  If there is some issue about it
14   being relevant conduct and it needs to have a heading
15   or something where he joined the conspiracy, but I'm
16   not sure that it affects at all the guideline
17   sentence.  It's just maybe -- I haven't really
18   studied it.
19          MS. KATZE:  I don't think it affects the
20   guidelines, Your Honor.  I think it affects your
21   mind.  That's what concerns me.  You have to make a
22   judgment between 154 and 171 months.  And if you're
23   thinking about these horrible facts of the murder,
24   right, that colors the way you weigh all the factors.
25          THE COURT:  Well, I've already put down --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and I'm sure you're going to give me others -- on
 2    putting downward pressure on the sentence is the fact
 3    that he was not involved in the murder, and no
 4    witnesses have indicated that he was part of the
 5    murder.  Those are good factors for him, so I -- I'm
 6    trying to be very balanced here, but those seem to be
 7    very important factors for your client.  And I have
 8    written those down to emphasize to myself, and I will
 9    probably repeat it when I give the sentence, because
10    I think those are very important things to remember.
11            MS. KATZE:  I appreciate that, Your Honor.
12    I think you're right, in your parlance that that is
13    downward pressure.
14            My concern is what, in your mind, is upward
15    pressure.  And I'm just afraid that some of those
16    things they're not fair, they're not fair that those
17    would be providing upward pressure.
18            THE COURT:  I'm looking at the things that
19    I have listed so far as putting upward pressure, and
20    I do not see anything that I have written down that
21    goes before he arrived at the scene.  So I understand
22    your concern, but I think I'm compartmentalizing
23    these -- I think I'm compartmentalizing these.  I
24    don't see a single thing about before he was
25    involved, just looking through my notes so far.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. KATZE:  Your Honor, I will move on as
 2   far as the relevant conduct issue.  I think the Court
 3   understands my position.
 4            What I'd like to say under my objections
 5   for not just relevant conduct, some of the assertions
 6   that the Government made, I want to just briefly talk
 7   about the importance of the indicia of reliability.
 8   And I talked about that right from the beginning,
 9   even including the victim's family.  But in this
10   particular case I think the credibility of these
11   anonymous -- basically anonymous CIs -- their
12   statement is relevant, right?  The reliability of
13   their statements are critical.  Obviously, the Court
14   is considering that.  That's the only factual basis
15   for this murder that the Court is considering.  And I
16   just want to --
17            THE COURT:  When you go to this, what is it
18   that you think I might be relying on that you're
19   particularly concerned about the credibility or
20   the --
21            MS. KATZE:  The whole factual effect on the
22   presentence report comes from the heavily redacted
23   reports of all this -- like conglomeration of
24   confidential informants.  And here's the problem:  We
25   don't know who the confidential informant is.  There
```

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                     1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                   e-mail: info@litsupport.com

1    is an issue of credibility and reliability.  And the

2    Supreme Court has said that "an accused has a due

3    process right not to be sentenced on materially

4    incorrect information."  I'll refer you to two

5    specific cases:  United States versus Tucker, 404

6    U.S. 443, at 447, said that an "accused has a due

7    process right not to be sentenced on materially

8    incorrect information."

9            Townsend versus Burke, 334 U.S. 736 at 741,

10   "Due process violation for a sentence to be based on

11   assumptions that were purely untrue."

12           And, Your Honor, even the Tenth Circuit has

13   specifically addressed issues of the importance of

14   indicia of reliability.  And that specific case, the

15   case I'm referring to, is U.S. versus Fennell.  It's

16   a Tenth Circuit case, 65 F.3d 812.  And they

17   specifically talk there about the court relying on

18   unsworn allegations, where there is no opportunity

19   for the court to have observed the people making the

20   statements, and that they can't really make any type

21   of opinion with respect to the veracity of the

22   speaker.

23           And so those are my concerns, Your Honor,

24   with respect to relying on the statements of this

25   amorphous group of informants.  And so I said I would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   talk about relevance, conduct, and indicia of

2   reliability.  And so I just wanted to follow up with

3   that.  And kind of related to that, Probation refers

4   to, and the Government kind of supports referring to

5   these alleged murderers as co-conspirators.  A

6   conspirator -- again, it's a word we have to be

7   careful of, right?  It's a term of art.  And the

8   point is that those other people are probably

9   co-conspirators in the commission of a murder.  Can

10  you co-conspire to kidnap, leaving a murder, and then

11  when you try to get rid of the body you conspire to

12  be accessory after the fact?  That's not how it

13  works, that's not how it breaks down.

14          Mr. Black is not a co-conspirator.  He

15  wasn't involved in the murder.  He's accessory after

16  the fact.  Just so that we remember, I just want to

17  briefly read you from 18 USC 3, Accessory After The

18  Fact.  "Whoever knowing that an offense against the

19  United States has been committed received, relieves,

20  comforts, or assists the offender in order to hinder

21  or prevent his apprehension, trial or punishment is

22  accessory after the fact."  Those are the elements of

23  that crime.  Those are the only elements of that

24  crime.  There is no victim in the elements of that

25  crime.  There is no specific harm to anybody in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   elements of that crime.

 2           Your Honor, I will move on at this point to

 3   some of the arguments that we had in our -- in the

 4   sentencing memorandum.  One of the things -- and Mr.

 5   Marshall has already talked about Mr. Black's, what I

 6   would call highly unusual disclosure.  The

 7   authorities would not have discovered the evidence of

 8   the murder without Johnny Black's assistance.  They

 9   have, at least as best I can tell from the highly

10   redacted reports, they have confessions from a number

11   of people to a murder, but they have not charged

12   anyone.  So now, as a result of Johnny Black's

13   assistance, they have something.  Now, it was the

14   Government that approached Johnny Black because they

15   had nothing; they had no idea where the remains were,

16   and now they have them.  And they can start working

17   on charging the people who are actually responsible

18   for the murder.  And Johnny Black agreed to do that

19   because he believed it was the right thing to do.

20   And it's important that we see this, the fact that he

21   did this, as him showing remorse.  And it's a

22   significant step towards his rehabilitation.  And the

23   family can finally have closure.

24           With respect to the issue that -- I brought

25   this up in my objections -- and again, I'm going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    state I would like the section about tattoos and
 2    gangs removed from the presentence report.  Mr. Black
 3    does not have a tattoo on the back of his neck that
 4    says "CK."  He has never been a member of the gang
 5    that Probation is again speculating that he's a
 6    member of.  It is very dangerous for Johnny Black to
 7    go to federal prison, which he's obviously going to
 8    go to for a substantial amount of time, with that
 9    information conveyed to the Bureau of Prisons,
10    included in his presentence report.  I mean, that's a
11    very dangerous allegation to make.  I looked at the
12    back of his neck; it does not look like a CK to me.
13    I saw Probation sent me a picture from Facebook where
14    his hand is up.  It is complete speculation.  There
15    is no evidence of it.  She got the information that
16    he had that tattoo from a report from the Aurora
17    Police, and they incorrectly identified a tattoo.
18    She took it a step further and attributed it to be
19    part of a gang of which he is affirmatively not a
20    member.  So I would ask that that be taken out, any
21    mention of that tattoo, any speculation to the
22    meaning of tattoos, and the Facebook picture.  I
23    think that --
24            THE COURT:  What paragraph is that, Ms.
25    Katze?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. KATZE:  Well, it's discussed a couple

2     of different places in the presentence report.  Do

3     you want me to tell you specifically?

4          THE COURT:  If we're going to --

5          MS. KATZE:  It's in my objections, Your

6     Honor.

7          THE COURT:  Well, I know, I thought that --

8     oh, I guess maybe I was hoping that most of the

9     objections had been taken care of, but we're --

10         MS. KATZE:  No, the last addendum Probation

11    indicated that she was asking Cibola to check and see

12    if he had that tattoo.  I looked at the tattoo this

13    morning.  He does not have that tattoo.  That

14    information needs to come out.

15         THE COURT:  Well, tell me which paragraph.

16         MS. KATZE:  Okay.  So let me get my

17    objections.  Let me see if I have those here.  Let me

18    get my objections, because it's in all the places

19    that I mentioned in my objections.  So in my

20    objections on page 3.  It's mentioned in paragraph

21    96, paragraph 116, and paragraph -- I'm sorry --

22         THE COURT:  Let's go one at a time.

23    Paragraph 96.  All right.  You must be using the old

24    PSR.

25         MS. KATZE:  I'm sorry, it was from the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    original PSR that I related my objection to it.

2             PROBATION OFFICER:  I think it's paragraph

3    95, Your Honor.

4             THE COURT:  95.  Is there any problem with

5    the first sentence?  "It is noted that a photo from

6    the defendant's Facebook page shows him holding up a

7    hand sign."

8             MS. KATZE:  Yes, I would object to that.

9    What's the relevance of it?

10            THE COURT:  Well, I think generally people

11   think those are gang signs.

12            MS. KATZE:  Right, exactly.  And that's

13   speculation and it's unfair speculation.  And I would

14   remind the Court that the Supreme Court says

15   Mr. Black has a due process right not to be sentenced

16   on materially incorrect information and speculation.

17            THE COURT:  There is nothing incorrect

18   about it.  It's what he did.  We'll determine the

19   relevance of it.

20            All right.  Let's go to the physical health

21   section.  "He has a tattoo of CK."

22            Have you looked at his neck, Mr. Marshall,

23   and determined whether that's correct or not?

24            MR. MARSHALL:  I have not, Your Honor.

25            THE COURT:  Do you want us to take a look

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   at it?  Do you want us to look at his neck and see
 2   whether it is?
 3              MS. KATZE:  I looked at his neck and he
 4   does not have CK tattooed on the back of his neck.
 5   You're welcome to come down and look at his neck.
 6              MR. MARSHALL:  Your Honor, it's supposed to
 7   be on his neck, and I thought it was possibly the
 8   left side of his neck.  I don't know if it was
 9   clearly the back versus the side.  Looks like he has
10   a paw print.
11              THE COURT:  Do you mind me asking him, Ms.
12   Katze -- it's in cursive writing, and I'm having a
13   little trouble seeing what it is.
14              MS. KATZE:  I can answer that question for
15   you.  I'd rather answer it.
16              THE COURT:  Okay.
17              MS. KATZE:  That is a name of a friend of
18   his.
19              THE COURT:  It's not CK?
20              MS. KATZE:  No, it is not.  He's not a
21   member of that gang.
22              THE COURT:  Why don't you turn him a little
23   bit to see what's on the left side of his neck.  I
24   see a name here.  These look like initials right
25   here.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. KATZE:  I believe it's an old tattoo.
 2              THE COURT:  What do you think that says
 3    right there?
 4              MS. KATZE:  I think it's just part of an
 5    old tattoo of a name.  I think the fact that it's so
 6    unclear to you, Your Honor, what it is, is further
 7    evidence that it is not CK.  And if Johnny -- I think
 8    you have experience with this, Your Honor -- gang
 9    members don't disavow the tattoos of their gangs.
10    And the fact that he's so adamant about the fact that
11    that is not a CK, that he's not a member of that
12    gang --
13              THE COURT:  All right.  So we'll take out,
14    "He has a tattoo of CK, which may relate to Crip
15    Killer," and I'll take out the evidence of "the
16    affiliation with the blood gang."
17              MS. KATZE:  Thank you.
18              THE COURT:  I'll take out the last sentence
19    as well.  Are you comfortable with that, Mr.
20    Marshall?
21              MR. MARSHALL:  Yes, Your Honor.
22              THE COURT:  So I'll just take out
23    everything but that first sentence.
24              All right.  What other --
25              MS. KATZE:  So it sounds like the numbers
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    all went back.
 2              THE COURT:  That's fine.
 3              MS. KATZE:  Originally it was 96, 116, 151.
 4    So let me see if it's 115.  It is?  Okay.  So it's
 5    now 115.
 6              THE COURT:  Okay.
 7              MS. KATZE:  It's in the middle there.
 8              And then the final thing is in the
 9    Probation's --
10              THE COURT:  All right.  So just take out
11    the CK.
12              MS. KATZE:  Yes, thank you.
13              THE COURT:  So I'll take out that.  The
14    rest of that is accurate?
15              MS. KATZE:  Yes, I believe so.  Or my
16    client -- when I read it to my client he did not
17    articulate anything.
18              THE COURT:  What else, Ms. Katze?
19              MS. KATZE:  Then it was in the final --
20    it's 151, so maybe now it's 150.  It's under factors
21    that may warrant a sentence outside of the
22    guidelines.
23              THE COURT:  Okay.
24              MS. KATZE:  So under the part where it says
25    "Nature and circumstances of offense and history
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    characteristics of defendant --
 2              THE COURT:  Yes.
 3              MS. KATZE:  -- the fourth to last thing
 4    says -- I mean, sorry.  Yeah, sorry.  The fourth to
 5    the last thing says, "The defendant appears to have
 6    some gang affiliation."
 7              THE COURT:  Okay, I'm not seeing that yet.
 8              MS. KATZE:  Do you see under "Nature and
 9    circumstances of the offense history and
10    characteristics"?
11              THE COURT:  Yes.
12              MS. KATZE:  "The defendant was primarily
13    raised by his mother, the defendant's adoptive
14    mother."  "The defendant is a 34-year-old man."  The
15    one right after that.  So it's four down and four up.
16    So it's the middle thing under that section.
17              THE COURT:  All right.  So I'm going to
18    find -- unless you think otherwise, Mr. Marshall, I
19    find that the Government has not established by a
20    preponderance of the evidence that he has gang
21    affiliation.  Just simply showing that in a picture,
22    I mean, you almost can't take a picture of a boy
23    anymore in America without them doing that.  So I'm
24    going to take out "appears to have some gang
25    affiliation and."  Is that acceptable to you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. MARSHALL:  Yes, Your Honor.  I mean,
 2    it's as much for his protection and the safety of
 3    other inmates, so --
 4            THE COURT:  So that works for you, Ms.
 5    Katze, there?
 6            MS. KATZE:  Yes, Your Honor.  Thank you.
 7            THE COURT:  What else, Ms. Katze?
 8            MS. KATZE:  Your Honor, so moving on in my
 9    sentencing memo I talked about Johnny -- and not to
10    go over every single thing in my sentencing memo --
11    but I think it's important to know and appreciate his
12    background; that he's from this very small, remote,
13    very isolated rural community in Alaska.  And I think
14    at first blush it almost sounds idyllic, but it's
15    pretty bleak up there.  I had actually hoped to be
16    able to go up there and make a sentencing video for
17    you.  But understand the circumstances that we're in,
18    with COVID and restrictions, I wasn't able to do
19    that.  But after talking to people who live in the
20    village, family members, and talking to Johnny about
21    it, I don't know that I can do justice in explaining
22    just how remote and isolated it is.  The village is
23    700 people, and they're basically all Native
24    Alaskans.  And the travel between villages, we
25    actually Googled it, and you can see -- there are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    some YouTube videos of, in the winter how they have
 2    to travel between the villages.  It could take all
 3    day.  They go on snowmobiles.  There are some cars in
 4    the village, and those come in either when the snow
 5    thaws and they can come in on the river if a barge
 6    can come through, or they figure out how to put like
 7    skids on the bottom of, like, say a pickup truck
 8    under the wheels and pull that with snowmobiles to
 9    pull that to the next village.  There are small
10    planes that come in that deliver the food.  And if
11    you have enough money, you can get to the next
12    village in the plane.  But it is so isolated.  And
13    there are just no opportunities there.
14            And I talked a little bit about the school
15    situation.  They have 54 percent graduation rate.
16    And I think they have 12 teachers.  100% of the
17    students there are poor enough to qualify for free
18    lunches.  So I wanted the Court to look at that.
19            That's sort of the backdrop behind the fact
20    that -- and Johnny gets diagnosed with learning
21    disabilities and he's in Special Ed.  How do you
22    really do Special Ed when you have 12 teachers in the
23    school?  And so I think it was really difficult
24    there.
25            And with respect to his parents -- this is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   just an indication of how tragic things are -- he did

2   not meet his father until he met him in jail, when

3   they were both in jail, when he was 18 years old.  He

4   was raised by his mother who -- as I talked about in

5   the sentencing memo, suffered from very serious

6   alcoholism.  I mean, right up until her sad death,

7   that she died alone of exposure in a park because she

8   was intoxicated.  And growing up, she was quite

9   abusive to Johnny and his siblings.  So Johnny found

10  himself in a caretaker role trying to protect his

11  siblings and keep them away from his mother, and kind

12  of try to monitor her mood, how angry or mean she

13  would be.

14          And I told you about the fact that Johnny

15  has two children, and sadly has lost custody of one

16  of them, but luckily has maintained close contact

17  with his daughter, Cara.  I talked to Cara's mother,

18  Carol, who works in a native store, which I also was

19  able to see on YouTube video.  It's a teeny little

20  store with narrow aisles you can barely walk down.

21  She's really supportive of Johnny and his

22  relationship with Cara.

23          And in sort of moving on, I think the sad

24  heart of the problem, the alcoholism or substance

25  abuse -- Johnny in no way, by the way, is denying

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that he used methamphetamine.  I thought maybe the

2    Government in their sentencing memo was making it

3    sound like he's just calling himself an alcoholic;

4    he's not a drug addict.  He absolutely struggles with

5    substance abuse in the most general terms.  And he

6    did use methamphetamine and was addicted to it.  So

7    he recognized that alcohol is his biggest challenge,

8    and that's generally been where that connection to

9    him making some very bad decisions and him getting in

10   trouble.  There is so much evidence of the hereditary

11   nature of the disease of substance abuse, including

12   alcoholism.  And I provided some there.  And it's

13   just an extremely destructive disease.  And it is a

14   disease.  And Johnny struggles with it.

15           And so did Jessica Mora.  And sadly,

16   Jessica Mora was a drug addict as well.  She was

17   struggling.  And her family described her as expert

18   at stealing money.  And they have reported that she

19   stole $500 from Nicole's debit card; that was her

20   niece that was here in the wheelchair.  And she stole

21   $160 from Claudette's debit card; that's her aunt.

22   And I know that there is a period of time that she

23   was estranged from her family.  I understand how that

24   happens.  When you have a child, even though it's

25   heartbreaking, when they're a drug addict and they're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    stealing from you, sometimes you just have to draw

2    the line and say that:  You can't have anything to do

3    with them.

4            So I think sadly what happened is Jessica

5    Mora had stolen from her family, taking the debit

6    card.  She stole Crystal Ramos' debit card, and she

7    stole $400.  And she did not deserve to die for $400.

8    I assume she stole that $400 because she was a drug

9    addict, because she was a substance abuser.  And the

10   woman that she stole from that day, and the people

11   who were with Crystal Ramos, they should have shown

12   her mercy.  They should have shown her mercy.  She

13   was wrong for stealing that money, and she made a

14   mistake.  But they should have shown her mercy.

15           Johnny Black made a mistake, he did

16   something wrong.  He made bad decisions because he,

17   too, suffers from the horribly destructive disease of

18   substance abuse.

19           We're asking that you show him some mercy

20   and sentence him to 154 months.

21           And I'm asking that you give him 3 years of

22   supervised release.  Evidence shows that over and

23   over again negative results of too much punishment

24   and too much supervision.  Too much supervision, more

25   and more there are some really good studies on point

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   about that, about how ineffective too much supervised
 2   release is.
 3           Also, I would ask that you give Johnny some
 4   kind of treatment for this horrible disease of
 5   addiction that he suffers from.  He's taken a big
 6   step towards his rehabilitation, I think, by
 7   assisting the Government.  And I think now part of
 8   his continued rehabilitation he needs treatment.  And
 9   I think even the Government recognized.  They pointed
10   out in their sentencing memo -- and I appreciate the
11   Government's recognition of this -- they said that
12   Johnny was distraught over the death of his
13   girlfriend at the hands of the police, and that it
14   was substance abuse, his sense of hopelessness after
15   Ramos death that caused him to shoot at police.  They
16   also recognize that it was -- the fact that they
17   recognized that his substance abuse played a major
18   role in him making bad decisions.
19           I would also point out that one of the
20   addendums Probation filed, they were able to just
21   recently get information about how well Johnny did in
22   a program that he participated in in Northern New
23   Mexico.  And I think that that's important, because I
24   think it shows that he really wants -- he wants to do
25   better and he wants to be a better person.  He wants
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    to be healthy.  Why wouldn't somebody want to be
 2    better and be healthy?
 3            So I would ask that, again, that you
 4    sentence him to 154 months and 3 years supervised
 5    release.
 6            And I just want to end with this one last
 7    comment.  I wanted to point out that Jessica Mora's
 8    brother, Alan, who spoke, his plea to you at the end
 9    of his presentation was that you hold the people
10    responsible for her horrific death.  And so I think
11    what they're looking for is not -- they're not going
12    to feel that complete relief until the actual
13    murderers, people who have already confessed to the
14    actual murder, are actually prosecuted.  And Johnny
15    is not the person who murdered her.
16            Thank you, Your Honor.
17            THE COURT:  Thank you, Ms. Katze.  Have I
18    ruled on all your objections?  Did I get them all?
19    We've changed the PSR.
20            MS. KATZE:  I think so.  And actually, I
21    think I should say one more thing just to address
22    your very original question about accepting the plea.
23    With respect to the accessory after the fact, the
24    Government could never have charged him with that.
25    They had not originally charged him with that in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    complaint.  They couldn't have charged him with it.

 2    He never made a statement about it.  There was no

 3    actual evidence of it.  So they couldn't have charged

 4    him with it without his own admission.  And he agreed

 5    to plead guilty to it and admit his involvement in

 6    it.  And I think that's a substantial thing right

 7    there.  Because like I said, they would not have been

 8    able to have charged him without his own admission.

 9              THE COURT:  All right.  Thank you, Ms.

10    Katze.

11              Now we're going to take the statement from

12    Mr. Black?

13              MS. KATZE:  Do you want him to sit there?

14              THE COURT:  Did he find his statement?

15              MS. KATZE:  Yes, they found it.  Somebody

16    was able to.  Do you want him to stand here?

17              THE COURT:  He doesn't have to stand.  He's

18    welcome to stand.  Just as long as Ms. Bean can hear

19    him.  So if he wants to stay seated and talk into the

20    mic.  Whatever works for him.

21              Mr. Black, you have an opportunity to speak

22    on your own behalf before sentence is imposed.  What

23    would you like to say to the Court, and what would

24    you like the Court to consider before it imposes

25    sentence this morning?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            THE DEFENDANT:  First of all, Your Honor,

 2    you know, what I was involved in, you know, there is

 3    no -- I'm very sorry.  If I had showed up at that

 4    house a lot earlier, I believe in my heart that

 5    Jessica Mora would still be here.  I don't think she

 6    should have died -- she shouldn't have died over

 7    $400, you know what I mean?  And my involvement after

 8    the fact of that, you know, I cannot apologize

 9    enough.  I can't give that family back a daughter, a

10    friend, a cousin, a sister; you know, I can't give

11    that back.  I can say sorry, you know, because how

12    would I feel if someone took my sister?  I would be

13    hurt.  But I just want to, you know -- I apologize,

14    and for my actions.  And I'm going to go to prison

15    for a long time, and I just want you to know that, as

16    a man, I do apologize for my involvement in what

17    happened to Jessica Mora after the fact of her death.

18    And like I said, I can't give her back.  I can't

19    recreate those moments for you guys, you know.  I

20    apologize.  And I just want you to know that whatever

21    time the Judge gives me, you know, I will serve this

22    time, and I will be thinking about her, you know.  I

23    knew Jessica Mora for a little while, not that long.

24    She helped me around with a couple of things around

25    the house.  You know, she helped me with some carpet.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
1    She was a very smart woman.  I will think about
2    those.  I will think about your family.  And I'm
3    going to have to live with those moments the rest of
4    my life, just as you will.  And I just want you to
5    know I deeply apologize with all my heart.  And I
6    brought a little letter for you, Your Honor, that I'd
7    like to read.
8             THE COURT:  You may.
9             THE DEFENDANT:  It goes:  "To the Court,
10   Honorable Judge Browning, I would like to start off
11   by saying I am sorry for inconveniencing the Court
12   due to my irresponsible conduct and behavior in
13   society.  I wrote this letter in regards to my
14   sentencing, and would like to personally apologize to
15   the Court, the community, as well as the family and
16   individuals I affected due to my behavior that
17   demonstrated irresponsible conduct.  I understand
18   that my actions cannot go without punishment.
19            I have already began to utilize the time I
20   spent in pretrial detainer to better myself and to
21   correct my thinking pattern.  I know, as a human, we
22   all have our problems and make mistakes.  Mine was
23   allowing myself to be weak-minded and reliant on
24   drugs and alcohol to cope with my issues and
25   problems.  I understand that those two substances are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    my downfalls and causes of my problems that got me
2    into the situation I am about to face.  Knowing that
3    I have an alcohol and drug use problem, I understand
4    that it is my responsibility to seek treatment if I
5    am to correct these problems and truly become
6    rehabilitated and an upstanding citizen of society.
7              With that said, Your Honor, I would like
8    you to know that whatever my sentence is, I am going
9    to use that time wisely to become a better father, a
10   better person in general.
11             At this time, I would like to ask you to
12   impose the sentence that is lesser in severity, that
13   still administers justice.  This is so I am allowed a
14   second chance to become a new man as I strive to
15   close this chapter of my life and put it behind me.
16             Thank you for your time and considering my
17   letter, as well as your patience.  Best regards.
18             THE COURT:  All right.  Thank you, Mr.
19   Black.
20             Anything else, Ms. Katze, from you or Mr.
21   Black?
22             MS. KATZE:  Not right now, Your Honor.
23             THE COURT:  All right.  Did you have
24   something further you wanted to say on relevant
25   conduct or anything else, Mr. Marshall?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. MARSHALL:  Yes, Your Honor.
 2              First, I think I'd just like to change my
 3   position in terms of the supervised release.  Due to
 4   the error in the plea, I think I would ask for 3
 5   years of supervised release.  I just don't want that
 6   to become a potential appellate issue, since we had
 7   the wrong term of supervised release under the
 8   penalty section of the plea.  So I would ask --
 9              THE COURT:  Did that get cleared up before
10   a magistrate?
11              MR. MARSHALL:  No, it never got cleared up.
12   The defense said they weren't going to object, but
13   since it was in the plea language, I didn't want that
14   to become an issue in the future.  It was the wrong
15   penalty was included as part of the plea, the maximum
16   penalty for the SR.
17              THE COURT:  What did the plea say?
18              MR. MARSHALL:  The plea says 3 years, the
19   real term should be 5.  And just to prevent any
20   future issues, I would just ask for the 3 year
21   sentence since that was the maximum that was included
22   as part of the penalty section.
23              THE COURT:  Well, I had this yesterday,
24   too.  I think we better get it cleared up.  The
25   Government did the wrong TSR in the plea.  Let's take
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    a break; y'all talk to Ms. Wright, and let's get back
 2    in front of a magistrate judge and replead this.  If
 3    there is a problem with the TSR --
 4             MS. KATZE:  Your Honor, I'm sorry to
 5    interrupt.  My thought was statutorily the maximum
 6    term of supervised release is 5 years.
 7             THE COURT:  Oh, it's a maximum term?
 8             MS. KATZE:  Probation had the term
 9    correctly in the presentence report.  I went over the
10    presentence report with my client.  And that's why I
11    said to Mr. Marshall I was not opposing him
12    arguing -- he wanted to argue for 5 years supervised
13    release.  I said I would not oppose that.  I
14    recognize that the term was 3 years in the plea
15    agreement, but I think the statute is different than
16    that, and Probation correctly has a possible penalty
17    in the presentence report.
18             MR. MARSHALL:  Yes, Your Honor.  So it
19    wasn't a minimum of 5, it was up to -- the plea said
20    "up to 3," and it should have said "up to 5."  And so
21    just to prevent --
22             THE COURT:  For some reason I've got two
23    PSRs, but I don't have any plea agreement.  So maybe
24    in the break we're about to need to take I'm going to
25    have to get a plea agreement and see -- I take your
```

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                    Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

```
 1   word for what it says, but somebody needs to probably

 2   give me a plea agreement.  Can Probation live with 3

 3   years?  I know y'all are recommending 4.  Can you

 4   live with 3 years?

 5            PROBATION OFFICER:  Yes, Your Honor, if the

 6   parties are in agreement.

 7            THE COURT:  Well, if everybody is

 8   comfortable with the record, I'll just sentence at 3

 9   years supervised release, and we'll keep it there.

10            Why don't we do this, Mr. Marshall:  You

11   have more things to say, but we've been going since

12   8:30, and I need to take care of Ms. Bean.  Why don't

13   we take about a 15-minute break, and we'll come back.

14   That way we're not rushing you.  And it's going to

15   take me a while to sentence him as well.  So let's

16   take about a 15-minute break and we'll come back in.

17   Somebody give me -- there is only one plea agreement,

18   right?

19            MR. MARSHALL:  Yes, Your Honor.

20            THE COURT:  So just give me a copy so I

21   have it up here.

22            All right.  We'll be in recess for about 15

23   minutes.

24            (The Court stood in recess.)

25            THE COURT:  All right.  We'll go back on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the record.  Mr. Marshall, you were addressing the
 2    Court about some additional remarks?
 3               MR. MARSHALL:  Yes, Your Honor.  Some of
 4    the things that I just wanted to kind of rebut that
 5    came up from defense counsel's argument was -- the
 6    first one that came to the charging.  It is true that
 7    nothing had been charged prior.  But I would disagree
 8    with the assessment that we would not have charged
 9    him without his admission.  Defense counsel must have
10    thought that there was enough evidence because he
11    also took the plea agreement.
12               I know that there was limited discovery in
13    this, as defense counsel has alluded to, as the crime
14    of the kidnapping and the murder of Jessica Mora is
15    still under investigation.  But defense counsel and
16    defendant themselves must have felt that there was
17    enough evidence for them to plead guilty.
18               And that's something else I wanted to
19    mention.  Defense counsel made some discussions about
20    the fact and the reliability of the evidence.  But
21    when you look at the defendant's statement, which is
22    something that he's admitted to, that's part of the
23    plea agreement, and you look to the reliability of
24    the information, you see that law enforcement was
25    able to do -- to find the burn site, and that there
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    were -- where they found some of the initial remains.
 2    They found also some fabric and some evidence that
 3    they -- as well as some bones and some jewelry that
 4    provided some means of identification.  While OMI was
 5    not able to identify from that information clearly
 6    that it was Jessica Mora, there was indication that
 7    it was a female.  And then there was some identifying
 8    jewelry that was found at the burn site.  Defendant's
 9    own information confirmed some of the information
10    regarding like the toolbox, and some of the other
11    information that had come in from the people that
12    were kind of listed generally as the informants.  And
13    OMI discussed that the remains had been dismembered
14    and burned.
15            And with the language in the plea
16    agreement, I think that that information that came
17    from these different informants is relatively
18    reliable, especially on the key components when it
19    comes to the charges of the defendant.  And when
20    we're looking at those, we see that these acts were
21    egregious.
22            And I wanted to also discuss some of the
23    things in the relevant conduct.  Defense counsel was
24    quoting some of the portions of 1B1.3.  But it's also
25    to note that through the case law, as well as from
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the Sentencing Guideline book that the Court is

2    allowed to consider conduct that is not formally

3    charged or is not an element of the offense of

4    conviction, and that may enter the determination of

5    the applicable guideline sentencing range.  The range

6    of information that may be considered at sentencing

7    is broader than the information upon which the

8    applicable sentencing range is determined.  That's in

9    the background information, but it's also repeated in

10   the case law as well.

11          But it's also important to note, Note 9 is

12   specific to accessory after the fact.  And that was

13   not something that was discussed necessarily by

14   defense counsel.  Note No. 9 under 1B1.3 says, "In a

15   case of solicitation, misprision, or accessory after

16   the fact, the conduct for which the defendant is

17   accountable includes all conduct relevant to

18   determining the offense level for the underlying

19   offense that was known, or reasonably should have

20   been known, by the defendant."  So it's clear that

21   under Note 9, the underlying conduct that is related

22   to the kidnapping resulting in death is relevant for

23   the Court to be considering at this time, and it's

24   part of relevant conduct for the Court.

25          So the objections by defense counsel seems

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   to be relatively moot at this point, because it is
2   clear that this is the kind of information that the
3   Court is to consider at sentencing.
4           And so there is no reason to either redact
5   or remove any of that because it is all part of
6   relevant conduct and all part of the information that
7   the Court should be considering.
8           Defense counsel also seemed to object to
9   some of the considerations of speculation, and
10  accused the United States of speculating.  But the
11  irony is that defense counsel then turns around and
12  then begins speculating for their justification for
13  why a defendant would appear with tarps and plastic
14  to the scene of a homicide.  So it's unknown what his
15  motives were for why he showed up.  And was he called
16  while he was out of the house and told to come back
17  with tarps and plastic?  Or was he aware of the plan
18  and did he show up?  I think there is evidence that
19  points that he was aware of a plan to either injure
20  or murder Jessica Mora, and then he returned with the
21  tarps and the plastic.  But a reading could be made,
22  like defense counsel, that he was called and
23  contacted.  There is no evidence of that phone call
24  that's been presented.  But there is evidence that he
25  was -- that he had some knowledge of what might have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   been going on in the home, whether or not he was an

2   active participant in it.

3           Ultimately, Your Honor, this was a very

4   heinous homicide over $400.  Substance abuse seemed

5   to have played a large part in this, but ultimately,

6   no one deserves to die for $400.  The homicide itself

7   was a heinous act.  And the things that they did to

8   her were awful.  But the things that they did, that

9   Johnny Black participated in were equally as awful.

10  It's taken two and a half years, essentially, to find

11  the full remains of the body.  And the defendant

12  participated in the dismemberment and burial.

13          MS. KATZE:  Excuse me, Your Honor --

14          THE COURT:  No, I'll let you -- I'll come

15  back to you.

16          MS. KATZE:  Can I tell you my objection?

17          THE COURT:  No, no, no.  Sit down.

18          Mr. Marshall.

19          MR. MARSHALL:  And that Johnny Black's

20  participation was equally heinous in the

21  dismemberment, the burning, and the burying of

22  Jessica Mora in an isolated area.  These acts that he

23  participated in were egregious acts and deserve the

24  punishment fully under the sentencing range.  And the

25  part that hasn't been fully discussed is that this is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   only one of the two counts the defendant is facing.

2   Defendant is also facing the charges for the

3   discharge -- I'm sorry, brandishing a firearm during

4   a crime of violence.  He committed two acts.

5   Independently, either one of those acts would justify

6   the sentence.

7          So, Your Honor, under the sentencing

8   agreement, we would ask you to sentence him to the

9   full maximum sentence of 171 months, to be followed

10  by 3 years of supervised release.

11          THE COURT:  All right.  Thank you, Mr.

12  Marshall.

13          Ms. Katze.

14          MS. KATZE:  My objection, which is now

15  moot, was that I understood that you would allow Mr.

16  Marshall to respond to my closing remarks, but he was

17  then just going on to repeat his closing remarks,

18  which seemed a little unfair to me.

19          THE COURT:  All right.  Anything else, Mr.

20  Marshall?

21          MR. MARSHALL:  No, Your Honor.

22          THE COURT:  All right.  I will now state

23  the sentence, but the attorneys will have a final

24  chance to make legal objections before sentence is

25  imposed.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1        The Court adopts the presentence report

2   factual findings.  We've made some changes to those

3   this morning, particularly as related to the tattoos

4   on Mr. Black's neck, and some findings about his gang

5   affiliation that we're going to remove.  So with

6   those changes, the Court will adopt those as its own.

7        The rest of it I have made rulings on as to

8   what's going to be left in, and not a great deal of

9   dispute about the accuracy of those findings, just

10  whether they're relevant and should be included.  And

11  I made rulings on those.

12        The Court's also considered the Sentencing

13  Guideline applications.  At this point, there not

14  being any dispute about those, the Court will adopt

15  those as its own as well.

16        The Court's also considered the factors set

17  forth in 18 USC 3553(a)(1) through (7), and I'll

18  discuss those in more detail in a moment.

19        As to -- and some of this is repeating what

20  I said at the beginning -- but as to Count 1, the

21  guideline sentence is the statutorily required

22  sentence of seven years, which will run consecutive

23  to any sentence imposed.

24        As to Count 2, the offense level is 27, and

25  the criminal history category is 5, establishing a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    guideline imprisonment range of 120 to 150 months.

2    So that's the one that I have the ability to vary

3    from.

4              Therefore, the total guideline range is 205

5    to 234.  However, under Rule 11(c)(1)(C) of the

6    Federal Rules of Criminal Procedure, the Court now

7    accepts the plea agreement which includes a specific

8    sentence of 154 to 171 months, as the Court is

9    satisfied that the agreed sentence is justified.  And

10   in my remarks on where to sentence within that range

11   I'll make some indications as to why I think that the

12   plea agreement is appropriate.

13             The Court notes that the defendant

14   brandished a firearm at federal officer John Doe, and

15   assisted co-conspirators, or assisted these other

16   people -- I'll just say assisted other people to burn

17   and bury the body of Jane Doe after her murder.

18             The Court has, as I think this record will

19   reflect, carefully considered the guidelines.  But in

20   arriving at its sentence, the Court has taken into

21   account not only the guidelines but other sentencing

22   goals.  Specifically, the Court has considered the

23   guideline sentencing range established for the

24   applicable category of offense committed by the

25   applicable category of defendant.  And as I've

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    indicated, I don't believe the punishment that's set

2    forth in the guidelines is appropriate for this sort

3    of offense.  But I have continued to consider the

4    kind of sentence and range established by the

5    guidelines, because I do think it's a useful starting

6    point for the Court to make a determination where

7    within the range that the parties propose to sentence

8    Mr. Black.

9            I have identified -- and in a case like

10   this there is some of these overlap, some of them go

11   on both sides of the equation -- but I've identified

12   about 35 factors that I think put some downward

13   pressure on this sentence to take it not only out of

14   the guidelines, as the parties have done, and also

15   the Court has agreed to do as well, but also to try

16   to determine where within the proposed range the

17   sentence should be.

18           Let me first say that I think something

19   that puts downward pressure on it is the need to not

20   hold Mr. Black guilty, responsible for the murder.

21   He has made admissions for the crimes that he is

22   convicted of.  He has -- and he's apologized, and

23   he's agreed to cooperate.  And I think those things

24   should be taken into account.  And the line should be

25   carefully demarcated in my assessment and calculus of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    the 3553(a) factors that the murder largely should be

2    put aside for determining his sentence.

3          The assistance that he has provided is

4    important and puts downward pressure.  His

5    acknowledgment of his role, and the fact that he

6    provided assistance to the location of the toolbox,

7    and helped the recovery and appropriate -- at an

8    appropriate location or approximate location of where

9    the body and remains were.  That has allowed

10   officials to take the evidence and have it found and

11   analyzed.  And that has aided in this matter.  And I

12   hope it has provided some peace of mind to the family

13   to have the body or the remains back.  I don't think

14   it was a good position for them to be wondering

15   whether she was still alive.  And this will allow

16   what remains have been found for a proper funeral

17   service.  And I know it's been a long time, but that

18   sort of thing can go a long way to helping bring some

19   closure.  It may still yet to become fully closed for

20   the family, but it will go a long ways to helping do

21   that once they're able to have a service for their

22   loved one.

23          I think it's important, and I think it puts

24   downward pressure on the sentence to focus on the

25   fact that he only participated -- we only have

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492



PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

1    evidence that he participated after the murder act,

2    so that he is not part of the murder.  And we don't

3    have any witnesses that said he was part of the

4    murder.  So it's very careful to keep that

5    distinction between the murder and what happened to

6    the body afterwards, and focus on the defendant's

7    role.

8             I do think there are some things about Mr.

9    Black that supervised release from the federal

10   government and its resources could help him.  So when

11   I -- my task as a district judge is not to just come

12   in here and come up with a reasonable sentence; it's

13   to come up with a sentence that accurately reflects

14   the 3553(a) factors.  So the sentence should not be

15   any greater than is necessary to promote those

16   factors.

17            As to his background, I do think there are

18   some things, as Ms. Katze said that -- it was a bleak

19   background.  And I will accept that there were few

20   opportunities in the community; that Mr. Black had a

21   learning disability; that there were few teachers up

22   there and resources to maybe deal with that.  The

23   fact that he met his father, this biological father,

24   when he was in jail and they were there together, is

25   a very sad fact.  And the fact that his mother died

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                                       Albuquerque, NM 87102
(505) 989-4949                                                                    (505) 843-9494
FAX (505) 843-9492                                                          FAX (505) 843-9492
                                                                                   1-800-669-9492
                                                                          e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   in a park of exposure, that's a bad fact.  And I

2   think his background does put downward pressure on

3   the sentence.  Because I think supervised release

4   could maybe help him more than incarceration on some

5   of those things.

6         I think we're all in agreement the

7   methamphetamine and alcohol may have contributed in

8   some way to getting him to the point where he

9   contributed to the disposal of this body, and then

10  shooting from the car.  I think his girlfriend, Ms.

11  Ramos' death, contributed to his attitude toward

12  police.  So I do think some things like that could be

13  addressed in supervised release rather than

14  necessarily more incarceration.  So I agree with

15  those.  So I think there are a number of factors that

16  put downward pressure on the sentence.

17        I do think there are many factors -- I've

18  identified about 50 factors -- again, some of these

19  could probably go on both sides of the ledger, and

20  some of them could overlap.  But I do want to start

21  with the seriousness of the offense.  And again, I'm

22  focusing on the events that occurred after the

23  murder.  Everything that occurred after the murder is

24  a very heinous act.  I think we all agree that it was

25  a horrific murder.  But we put that aside, I think,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    largely for determining Mr. Black's role.  But
 2    everything after the murder was still egregious.  And
 3    then the fact that we have a discharge -- shooting
 4    the firearm, it contributes to a very horrific
 5    situation, and then also a very dangerous set of
 6    circumstances.
 7              We're a long time down the road from the
 8    dismembering of the victim here.  So the sentence has
 9    to promote respect for the law and provide just
10    punishment.  I do think that I can infer that Mr.
11    Black was aware of what was going on after the
12    murder -- not that he was aware before -- by the fact
13    that he showed up with tarps and plastic, and arrived
14    with those, whatever brought him to bring those.  He
15    then began to collect her remains and eventually
16    helped dispose of those.  And while he was helpful in
17    their recovery, nonetheless, it appears he was an
18    essential part of the group or the actions that were
19    taken to dispose of her body by putting her remains
20    in a toolbox.  So he's not a minor player in what
21    occurred after the murder.  But he was a consensual
22    person in the coverup.
23              So the sentence has to afford adequate
24    deterrence both at a specific and general level.
25    Shooting a firearm.  You've got to protect the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   public.  A guideline sentence would avoid unwarranted
 2   sentencing disparity among similar defendants with
 3   similar criminal records.  And again, for a district
 4   judge, a reasonable sentence is one that is
 5   sufficient without being greater than is necessary to
 6   promote those factors.  So it has to be sufficient
 7   here.
 8             I accept that his losing Ms. Ramos, and her
 9   being killed, he was upset with the police officers.
10   But we just can't have that conduct in the community
11   that endangered people in Espanola.  It was multiple
12   dangerous situation.  So that's a very heinous act,
13   very dangerous act.  And there seems to be multiple
14   firearms and you're not supposed to have any
15   firearms.  So he's arrested with firearms.  So we
16   have multiple firearms, with the addiction to drugs
17   and methamphetamine.  I think that just creates a
18   real risk for the community.
19             Focusing on the victim herself and then
20   what Mr. Black did with her, he made a mistake.  And
21   it's his own words he calls it "irresponsible."  And
22   you take his statement in the plea colloquy where he
23   identified -- and then the corroborating evidence of
24   identifying the burn stains, the fabric, the bones,
25   the jewelry, I think we're pretty certain that this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    is the victim.

2             So I think taking all the evidence

3    together, the language in the plea agreement, I think

4    those are horrendous acts.  And I think that I can

5    consider everything that's in the PSR, that I've left

6    in the PSR, is relevant conduct and background.  And

7    I have a high degree of confidence that we have a

8    good picture of what Mr. Black did.  And we'll

9    probably know not everything, and we don't need to

10   know everything, but we probably have a pretty

11   complete and accurate picture.  But I think the

12   factors that put upward pressure on this overwhelm

13   the factors that put downward pressure.

14             I will accept the plea agreement, because I

15   think that there are a number of reasons why -- and

16   y'all told me why y'all have agreed to the sentence

17   you have.  But probably left alone I wouldn't have

18   varied from the guideline range in Mr. Black's case.

19   So I think something at the high end of the range

20   that you have agreed to is appropriate here.

21             Therefore, the Court concludes that a

22   sentence of 171 months is necessary, but also

23   adequate to reflect seriousness of the offenses,

24   promote respect for the law, provide just punishment,

25   afford adequate deterrence both at a specific and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    general level, protect the public.  It is a

2    considerable variance from even the bottom of the

3    guideline range, but I think we have worked hard to

4    justify that.  And so I think that it avoids -- I

5    think both the Government, the defense, Probation,

6    and the Court have worked hard to justify the

7    variance -- so I think it avoids unwarranted

8    sentencing disparities among defendants with similar

9    records who have been found guilty of similar

10   conduct.

11           And because I will be placing the defendant

12   on supervised release, I think it will effectively

13   provide the defendant with some needed education and

14   training and care to try to assist him with some of

15   the problems that have brought him to this point.

16           In sum, I think the high end of the

17   proposed range is -- fully and adequately represents

18   and reflects each of the factors embodied in 18 USC

19   Section 3553(a).  I think the parties have proposed

20   with that top of the range a reasonable sentence.

21   And by that one that I think is sufficient without

22   being greater than is necessary to comply with the

23   purposes of punishment set forth in the Sentencing

24   Reform Act.

25           Therefore, as to Count 1 of information 1:

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    20-CR-00639 JB, the Defendant Johnny Black is

2    committed to the custody of the Bureau of Prisons for

3    a term of 84 months.

4                As to Count 2, the defendant is committed

5    to the custody of Bureau of Prisons for a term of 87

6    months.  Said terms shall run consecutively for a

7    total term of 171 months.

8                The Court recommends the defendant

9    participate in the Bureau of Prisons 500-hour drug

10   and alcohol treatment program.

11               As to Count 1 the defendant is placed on

12   supervised release for a term of 3 years.  As to

13   Count 2, the defendant is placed on supervised

14   release for a term of 3 years.  Said terms will run

15   concurrently for a total term of 3 years.

16               The defendant must comply with the

17   mandatory and standard conditions of supervision.

18   The following special conditions will also be

19   imposed.  I'm now going to state, I think it's seven

20   conditions, and these all relate to substance abuse.

21   So let me address those first, and then I'll give the

22   justification for all seven after I have stated them.

23               First, you must participate in an

24   outpatient substance abuse treatment program, and

25   follow the rules and regulations of that program.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                          1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

1    The probation officer will supervise your

2    participation in the program, provider, location,

3    modality, duration, intensity, et cetera.  You may be

4    required to pay all or a portion of the cost of the

5    program.

6           Second, you shall waive your right of

7    confidentiality and allow the treatment provider to

8    release treatment records to the probation officer,

9    and sign all necessary releases to enable the

10   probation officer to monitor your progress.  The

11   probation officer may disclose the presentence

12   report, any previous substance abuse evaluations

13   and/or other pertinent treatment records to the

14   treatment provider.

15          Third, you must submit to substance abuse

16   testing to determine if you have used a prohibited

17   substance.  Testing may include urine testing, the

18   wearing of a sweat patch, a remote alcohol testing

19   system, an alcohol monitoring technology program,

20   and/or any form of prohibited substance screening or

21   testing.  You must not attempt to obstruct or tamper

22   with the testing methods.  You may be required to pay

23   all or a portion of the cost of the testing.

24          Fourth, you must submit to search your

25   person, property, residence, vehicle, papers,




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    computers, as defined in 18 USC Section 1030(3)(1),

2    other electronic communications, or data storage

3    devices or media or office under your control.  The

4    probation officer may conduct a search under this

5    condition only when reasonable suspicion exists, in a

6    reasonable manner at a reasonable time for the

7    purpose of detecting illegal substances, alcohol,

8    weapons, and other contraband.  You must inform any

9    residents or occupants that the premises may be

10   subject to a search.

11            Fifth, you must not use or possess alcohol.

12            Sixth, you must not knowingly purchase,

13   possess, distribute, administer, or otherwise use any

14   psychoactive substances; e.g., synthetic

15   cannabinoids, synthetic cathinones, et cetera, that

16   impair your physical or mental functioning whether or

17   not intended for human consumption.

18            Seventh, you must not possess, sell, offer

19   for sale, transport, cause to be transported, cause

20   to affect interstate commerce, import or export any

21   drug paraphernalia, as defined in 21 USC Section

22   863(d).

23            These seven conditions are imposed because

24   of the defendant's history of substance abuse and his

25   history of violence with weapons.

SANTA FE OFFICE                                                                MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                     FAX (505) 843-9492
                                                                              1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1          I'm now going to state three more

2     conditions, and then I'll give the justification for

3     these three when we're done.  And these all relate to

4     trying to help Mr. Black reintegrate into the

5     community after he has served his prison sentence.

6          First, you must not communicate or

7     otherwise interact with co-defendants,

8     co-conspirators without prior approval of the

9     probation officer.

10          Second, you must not communicate or

11     otherwise interact with any known gang member without

12     prior approval of the probation officer.

13          And third, you must reside in a residential

14     reentry center for a term of 180 days.  You must

15     follow the rules and regulations of the center.

16          These three conditions are imposed to

17     assist the defendant with successful reintegration

18     into the community, to provide connections for

19     prosocial resources, to decrease negative

20     associations.  And I'm going to talk about a fine.

21     I'm not going to impose a fine, but in lieu of a fine

22     in a moment.

23          And then, finally, you must not communicate

24     or otherwise interact with the victim or victims

25     either directly or through someone else without prior

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    approval of the probation officer.  And this
 2    condition is imposed to protect the victims from
 3    unwanted contact or further harm.
 4              The Court finds the Mandatory Restitution
 5    Act of 1996 is applicable in this case.  The Court
 6    intends to order restitution.  However, restitution
 7    has not yet been determined.  Therefore, the Court
 8    will establish a restitution amount and schedule it
 9    at a later date.  And maybe before we get done with
10    the hearing, Ms. Wright could tell us what that date
11    will be so we have a target to work for.
12              Let me go back to the fine.  Based on the
13    defendant's lack of financial resources, the Court
14    will not impose a fine or a portion of a fine.  Also,
15    if there is any money available, I'd like for it to
16    go to the victims, if we determine that restitution
17    is appropriate.
18              However, in accordance with USSG Section
19    5E1.2(e), the Court has imposed as a special
20    condition that the defendant reside at a residential
21    reentry center.
22              The Court also considered alternative
23    sanctions, such as community service, location
24    monitoring, or a halfway house in lieu of all or a
25    portion of a fine and concludes the total combined
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   sanction without a fine or alternative other than the

2   halfway house, the reentry center is sufficiently

3   punitive.

4          Consistent with a stipulation in the plea

5   agreement, the defendant forfeits his rights, title,

6   and interests to the items outlined in paragraph

7   19 -- is that 19 of the PSR or the plea agreement?

8   It's the plea agreement, isn't it?

9          The defendant shall pay a special

10  assessment of $100 as to each count of conviction for

11  a total of $200, which is due immediately.

12         Let me ask both counsel if they know of any

13  reason why the sentence should not be imposed as the

14  Court has stated it other than what may have already

15  been argued to the Court?  Mr. Marshall?

16         MR. MARSHALL:  No, Your Honor.

17         THE COURT:  Ms. Katze?

18         MS. KATZE:  No, Your Honor.

19         THE COURT:  It is ordered that the sentence

20  is imposed as the Court has stated it.

21         Mr. Black, you can appeal your conviction

22  if you believe that your guilty plea was somehow

23  unlawful or involuntary, or if there is some other

24  fundamental defect in the proceedings that was not

25  waived by your guilty plea.  You also have a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    statutory right to appeal your sentence under certain
 2    circumstances, particularly if you think the sentence
 3    is contrary to law.  However, a defendant may waive
 4    those rights as part of a plea agreement, and you
 5    have entered into a plea agreement which waives some
 6    or all of your rights to appeal the convictions and
 7    any sentence imposed in conformity with the Rule
 8    11(c)(1)(C) plea agreement, which this one was, so
 9    you've effectively waived the right to appeal the
10    sentence itself.  Such waivers are generally
11    enforceable, but if you believe for any reason that
12    your waiver is unenforceable, you can present that
13    theory to the appellate court.
14             You have the right to apply for leave to
15    appeal in forma pauperis.  And what that means is the
16    Clerk of the Court will prepare and file a notice of
17    appeal upon your request, if you're unable to pay the
18    cost of an appeal.  With very few exceptions any
19    notice of appeal must be filed within 14 days of the
20    entry of the judgment.
21             Mr. Black, understanding that pursuant to
22    the plea agreement, you have waived the right to
23    appeal the convictions and any sentence imposed in
24    conformity with the Rule 11 (c)(1)(C) plea agreement,
25    which this one was, so you've effectively waived the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    right to appeal the final sentence imposed by this
 2    Court under 18 Section 3742(a), do you understand
 3    generally your rights to appeal?
 4              THE DEFENDANT:  Yes, Your Honor.
 5              THE COURT:  All right.  Counsel, you have
 6    copies of the two presentence reports and the two
 7    addendum.
 8              I guess we need to have a motion to dismiss
 9    the remaining counts of the indictment.  Do you have
10    that motion, Mr. Marshall?
11              MR. MARSHALL:  Your Honor, I do not have it
12    with me.  I will get that to the Court shortly.
13              THE COURT:  I assume there is no objection
14    to that, Ms. Katze?
15              MS. KATZE:  No objection.
16              THE COURT:  All right.  Anything else we
17    need to discuss while we're together?  Anything else
18    I can do for you, Mr. Marshall?
19              MR. MARSHALL:  Just one quick question,
20    does the Court need an order regarding the
21    forfeiture, or does the sentencing, does that take
22    care of the forfeiture of the handgun and the
23    ammunition?  If the Court would like me to prepare an
24    order --
25              THE COURT:  Normally when I say it in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    sentence, that's what we're talking about paragraph

2    19, right, in the plea agreement?

3            MR. MARSHALL:  Yes, Your Honor.

4            PROBATION OFFICER:  Yes, Your Honor.  I

5    have one more thing, Your Honor, if I may.  I believe

6    when you said the total guideline range, you said

7    205.  It should be 204, just to verify that issues.

8            THE COURT:  Yeah, I said it a few times.

9    But I meant to say 204.  If I said 205 here, it is

10   204.

11           Do you have anything else, Mr. Marshall?

12           MR. MARSHALL:  No, Your Honor.

13           THE COURT:  This is how I normally do it.

14   If y'all want something else, if it's all right with

15   Ms. Katze, you can run it past here, normally, I just

16   acknowledge what y'all agree to in the stipulation,

17   that's usually enough.  But if you need something

18   else, run it by Ms. Katze.

19           Anything else, Mr. Marshall?

20           MR. MARSHALL:  No, Your Honor.  Thank you.

21           THE COURT:  How about you, Ms. Katze?

22           MS. KATZE:  No, Your Honor.

23           THE COURT:  Counsel, I appreciate your

24   assistance on this matter.

25           Mr. Black, good luck to you.  It's a long

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    sentence, and you knew before you came in here it was
 2    going to be long regardless of where we came out in
 3    the range.  But you're still a young enough man to
 4    make a lot of yourself.  So try to use this time to
 5    get some drug issues taken care of.
 6                THE DEFENDANT:  I will, Your Honor.
 7                THE COURT:  You've got some things in the
 8    past.  So work on it.  Because you can still make
 9    something of yourself.  And so try to use the
10    resources of the federal government to try to help
11    you with some of those problems, okay?
12                THE DEFENDANT:  I will.
13                THE COURT:  And to the families, the
14    victim's family, good luck to you.  I know that there
15    may be some more things that are going to occur in
16    future cases and stuff like that, that doesn't bring
17    complete closure here.  But I hope this helps.  And
18    maybe down the road, there can even be some
19    forgiveness and things like that.  It may be a little
20    early for that.  But I wish the family as well -- I
21    wish them well also.
22                All right.  Y'all everybody be safe out
23    there.  Okay.  Y'all have a good afternoon, good
24    weekend.
25                (The Court stood in recess.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

96

1

2                    C-E-R-T-I-F-I-C-A-T-E

3

4    UNITED STATES OF AMERICA

5    DISTRICT OF NEW MEXICO

6

7

8         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

9    Official Court Reporter for the State of New Mexico,

10   do hereby certify that the foregoing pages constitute

11   a true transcript of proceedings had before the said

12   Court, held in the District of New Mexico, in the

13   matter therein stated.

14        In testimony whereof, I have hereunto set my

15   hand on March 17, 2021.

16

17

18

19   _____
     Jennifer Bean, FAPR, RMR-RDR-CCR
20   Certified Realtime Reporter
     United States Court Reporter
21   NM CCR #94
     333 Lomas, Northwest
22   Albuquerque, New Mexico 87102
     Phone:  (505) 348-2283
23   Fax:    (505) 843-9492

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com